*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0403p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ERIC SCOTT PATTERSON,

   *Petitioner-Appellant,*

   *v.*

THOMAS B. HASKINS, Warden,

   *Respondent-Appellee.*

No. 04-3280

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 99-00527—Edmund A. Sargus, Jr., District Judge.

Argued: May 10, 2006

Decided and Filed: October 31, 2006

Before: MOORE and GILMAN, Circuit Judges; ROSEN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Dennis C. Belli, Columbus, Ohio, for Appellant. Bruce D. Horrigan, ASSISTANT ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Cleveland, Ohio, for Appellee. **ON BRIEF:** Dennis C. Belli, Columbus, Ohio, for Appellant. Bruce D. Horrigan, ASSISTANT ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Cleveland, Ohio, for Appellee.

  GILMAN, J., delivered the opinion of the court, in which MOORE, J., joined. ROSEN, D. J. (pp. 20-25), delivered a separate opinion concurring in part and concurring in the judgment.

_____

## OPINION

_____

  RONALD LEE GILMAN, Circuit Judge. In 2003, this court granted Eric Scott Patterson a conditional writ of habeas corpus on the ground that the state trial court had omitted from its jury instructions a key element in defining the offense of involuntary manslaughter. *Patterson v. Haskins*, 316 F.3d 596, 599-602 (6th Cir. 2003) (*Patterson I*). After Patterson's retrial ended in a hung jury, the state announced its intention to try him for a third time. Patterson then sought to avoid a third trial—one at which the state has said it intends to introduce additional evidence—by

_____
[*] The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

filing a motion in the district court styled a "Motion to Invoke Continuing Jurisdiction for an Order Granting Petitioner's Unconditional Release and for a Stay of State Court Proceedings." The district court denied the motion, but granted a certificate of appealability (COA) regarding the propriety of its decision. Because we find no error in the district court's denial of Patterson's motion, and because we reluctantly conclude that no other avenue of federal relief is available to Patterson at this stage, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Patterson was convicted of involuntary manslaughter based on child endangering in July of 1997. He was sentenced to a term of between 10 and 25 years in prison. His wife Lisa was convicted of misdemeanor child endangering and received a sentence of six months in prison. Before the Ohio Court of Appeals, Patterson argued that the trial court had erred in excluding the expert testimony of a criminologist proffered by Patterson and that his conviction was unconstitutional because the evidence was insufficient to sustain it. The Ohio Court of Appeals rejected both arguments. As to the latter, the appellate court discussed the difference between an allegation that the evidence was insufficient to support a conviction and the argument that the verdict was against the weight of the evidence. It then concluded: "We have reviewed the record on appeal, and we find the evidence sufficient as a matter of law, and also find that the manifest weight of the evidence supports the jury's verdict that the State had proven the charges beyond a reasonable doubt." *State v. Patterson*, No. CT97-0035, 1998 WL 346857, at *3 (Ohio Ct. App. June 4, 1998).

After subsequent attempts to reopen his appeal and secure review by the Ohio Supreme Court failed, Patterson filed a petition for a writ of habeas corpus in federal court, raising six grounds for relief. The district court denied the petition, but granted Patterson a COA with respect to two issues: (1) whether the evidence produced at his trial was constitutionally insufficient to support his conviction, and (2) whether the jury instructions violated Patterson's due process rights by omitting a key element of the offense that the state was required to prove beyond a reasonable doubt.

This court reversed, holding that the state trial court had violated Patterson's due process rights by omitting the required element of proximate cause from the jury instructions for involuntary manslaughter. *Patterson I*, 316 F.3d at 609-10. Because the state appellate court on direct review had required only that the instructions be "sufficiently detailed," and not that every element of the offense be proved beyond a reasonable doubt, that court's decision was held to be "contrary to . . . clearly established federal law" as determined by the Supreme Court in *United States v. Gaudin*, 515 U.S. 506, 522-23 (1995). *Patterson I*, 316 F.3d at 608-09. Declining to pass on Patterson's other claim regarding the alleged insufficiency of the evidence, we instead granted Patterson a conditional writ of habeas corpus that required the state to retry him with proper jury instructions within 180 days. *Id.* at 611. We offered the following reason for declining to address the insufficiency-of-the-evidence claim:

> When the jury decided (according to faulty instructions) that Patterson was guilty of involuntary manslaughter based on child endangering, it ceased deliberating and therefore did not reach a decision on whether Patterson was guilty of the lesser included offense of involuntary manslaughter based on simple assault. A reasonable, properly instructed jury might have concluded that the evidence was insufficient to establish the causation element of involuntary manslaughter based on child endangering, yet then have convicted on the lesser included offense of involuntary manslaughter based on simple assault.

*Id.* at 611.

Patterson filed a timely petition for rehearing, pointing to a series of cases in which this court has stated that it will review insufficiency-of-the-evidence claims even under circumstances where it has set aside the judgment of conviction due to trial error. He cited the cases of *United States v. Quinn*, 901 F.2d 522 (6th Cir. 1990), *Delk v. Atkinson*, 665 F.2d 90 (6th Cir. 1981), and *United States v. Orrico*, 599 F.2d 113 (6th Cir. 1979). We requested a response from the state, but ultimately denied rehearing without further explanation. Patterson filed neither a petition for rehearing en banc nor a petition for certiorari. The mandate issued on August 1, 2003, after which Patterson was released on bail while awaiting his new trial.

Patterson's retrial commenced on January 26, 2004, 179 days after the mandate had issued. Four days before the second trial, the state informed Patterson's counsel that it intended to call two witnesses who had not testified at the first trial—Patterson's father (Carroll) and Patterson's wife (Lisa). The trial court permitted Carroll to testify, but granted Patterson's motion to exclude Lisa's testimony based on spousal immunity. When the jury was unable to reach a verdict, the state trial judge declared a mistrial and scheduled a third trial for February 17, 2004. The following day, the prosecutor sent a letter to Patterson's lawyer announcing his intention to again call Carroll and Lisa as witnesses at the third trial, and also to introduce a summary of a 1995 telephone conversation between Patterson and the county coroner. This conversation had not been presented at either of the first two trials.

Patterson then filed a motion in the district court styled a "Motion to Invoke Continuing Jurisdiction for an Order Granting Petitioner's Unconditional Release and for a Stay of State Court Proceedings." In that motion, Patterson maintained that the state had "violated the spirit, intent, and limitations of the conditional writ" issued by this court in *Patterson I* by initiating a third trial after the 180-day period had expired and by seeking to introduce evidence that was previously available but that had not been presented at the first trial.

The district court assumed that it had jurisdiction to stay the state-court proceedings but declined to do so, finding "nothing in the Sixth Circuit's decision [suggesting] that the State of Ohio may not now again re-try [Patterson] since his trial resulted in a hung jury." Likewise, the district court did not read the *Patterson I* opinion or the authorities cited by Patterson as barring the state from introducing evidence that it had not previously presented. Although it doubted that a COA was required for Patterson to appeal its decision, the district court nonetheless issued one, certifying the following question: "Did [the district court] err in refusing to grant petitioner's request for a stay of state court proceedings and an order granting his unconditional release?"

This court originally scheduled Patterson's current appeal for telephonic arguments in June of 2005, but then cancelled the arguments and asked the parties to brief two additional questions: (1) whether the original hearing panel should have addressed Patterson's insufficiency-of-the-evidence argument and, if so, (2) whether this court has the authority to do so now. The case was initially assigned to a panel that included the two circuit judges from the original panel, with a third circuit judge substituted for District Judge Rosen.

Following the rescheduled oral argument held on December 6, 2005, a concern arose that, because the court might have to revisit its previous decision in *Patterson I*, the proper panel to conduct such an inquiry should include all three judges from the original hearing panel. The original panel was consequently reconstituted with the gracious consent of Judge Rosen. A second round of supplemental briefing was implemented, and a second telephonic argument was held before us on May 10, 2006.

## II. ANALYSIS

Our analysis will proceed in three steps. First, we will consider whether we erred in *Patterson I* by failing to address the insufficiency-of-the-evidence claim. We will then decide whether we currently have the authority to address that claim either under the law-of-the-case doctrine or by recalling the mandate issued in *Patterson I*. Finally, we will address whether the district court erred in denying Patterson's motion to stay the state-court proceedings and grant his unconditional release.

We have reached the following conclusions: (A) Our refusal to address Patterson's challenge to the sufficiency of the evidence was an unwarranted deviation from the longstanding prudential rule in this circuit that an appellate court faced with arguments both that the evidence was insufficient and that the trial was infected with other constitutional error*s* needs to address the sufficiency-of-the-evidence issue, even if the court orders a remand of the basis of trial error; (B) because this general prudential rule is not constitutionally compelled and is subject to at least one narrow exception, our error in *Patterson I* was not so grave as to justify the extraordinary step of revisiting a decision issued over three years ago; and (C) the district court correctly concluded that this court's ruling in *Patterson I* does not bar the state from initiating a third trial outside of the 180-day window set forth in the conditional writ of habeas corpus or from presenting at that trial evidence not introduced at the original trial. Our detailed explanation for these three conclusions follows.

### A.     The refusal to address Patterson's insufficiency-of-the-evidence claim was an unwarranted deviation from this court's longstanding prudential practice

As noted above, we provided the following justification for declining to address Patterson's insufficiency claim in our 2003 decision:

> When the jury decided (according to faulty instructions) that Patterson was guilty of involuntary manslaughter based on child endangering, it ceased deliberating and therefore did not reach a decision on whether Patterson was guilty of the lesser included offense of involuntary manslaughter based on simple assault. A reasonable, properly instructed jury might have concluded that the evidence was insufficient to establish the causation element of involuntary manslaughter based on child endangering, yet then have convicted on the lesser included offense of involuntary manslaughter based on simple assault.

*Patterson I*, 316 F.3d at 611. Conspicuously absent from our analysis was any reference to the general practice in this circuit of considering an insufficiency-of-the-evidence claim even if a remand is necessary because of trial error. Although Patterson alerted us to the relevant authorities in his petition for rehearing, we did not amend our opinion to explain how, if at all, our decision was consistent with those authorities. We now face that question, starting with first principles.

### 1.     *This court's rule and the narrow exception thereto*

In *Burks v. United States*, 437 U.S. 1, 18 (1978), the Supreme Court held that "the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient." This is true, the Court later explained, because "an appellate court's reversal for insufficiency of the evidence is in effect a determination that the government's case against the defendant was so lacking that the trial court should have entered a judgment of acquittal, rather than submitting the case to the jury." *Lockhart v. Nelson*, 488 U.S. 33, 39 (1988). The rule announced in *Burks* applies regardless of whether the conviction being overturned by the federal court is a federal conviction or a state conviction addressed on collateral review. *See Greene v. Massey*, 437 U.S. 19, 24 (1978) (applying the holding of *Burks* in a habeas-corpus challenge to a state-court

conviction). An appellate court's declaration that the evidence was constitutionally insufficient to support a conviction, in short, has the same effect as a judgment of acquittal for the purposes of the double jeopardy analysis.

In the wake of *Burks*, this court, like many other circuits, developed a practice of reaching the sufficiency claim in situations where defendants have alleged both that the evidence against them was insufficient and that their trials were infected with procedural errors. One year after *Burks* was decided, for example, this court was called upon to evaluate a sufficiency-of-the-evidence claim along with alleged errors regarding the admission of evidence and the propriety of the jury instructions. *See United States v. Orrico*, 599 F.2d 113, 116, 119 n.5 (6th Cir. 1979). The defendant in *Orrico* was charged with intentionally causing checks to be transported in interstate commerce that he knew had been fraudulently taken and converted. *Id.* at 114. Orrico appealed his conviction on the grounds that the evidence against him was insufficient, that incriminating testimony had been improperly admitted at his trial, and that the jury instructions on the element of intent were deficient.

This court began its analysis by "decid[ing] the issue of sufficiency of the evidence, rather than admissibility, because the former issue is determinative of the question whether Orrico may be retried." *Id.* at 116. After concluding that the evidence against Orrico was insufficient, the court also determined that the jury instruction was likely erroneous and would independently require reversal of the conviction. *Id.* at 119 n.5. But the court refused to "rest [its] reversal on this ground . . . since such a decision would leave open the possibility of a retrial." *Id.*; *see also Delk v. Atkinson*, 665 F.2d 90, 93 n.1 (6th Cir. 1981) ("[W]here it is claimed on appeal . . . that the evidence was insufficient, the reviewing court is *required* to decide the sufficiency question even though there might be other grounds for reversal [that] would not preclude retrial.") (citing cases from the Third, Fifth, Seventh, and Tenth circuits) (emphasis added)).

This court's decision in *United States v. Aarons*, 718 F.2d 188 (6th Cir. 1983) (per curiam), revealed another salient aspect of the *Burks* rule—namely, that because a ruling that the evidence was insufficient to support a defendant's conviction bars retrial, an appellate court making such a ruling need not reach any other errors alleged on appeal. The defendant in *Aarons* was convicted of causing a false statement to be made to an agency of the United States government, in violation of 18 U.S.C. § 1001. *Id.* at 189. He raised multiple issues on appeal, one of them being that the evidence was insufficient to support his conviction. This court addressed his challenge to the sufficiency of the evidence as a threshold matter, explaining that "[w]here the sufficiency of the evidence is properly before us, we consider that issue first because it is determinative of whether the appellant may be retried." *Id.* at 189 n.1. Because the court agreed with Aarons that the evidence presented by the government was in fact insufficient to support his conviction, it declined to consider the other issued raised in his appeal. *Id.* Since 1983, therefore, the law of the circuit has been that challenges to the sufficiency of the evidence that were properly presented on appeal needed to be addressed and, where dispositive of the appeal, allowed the panel to pretermit discussion of any other alleged trial errors.

This court's decision in *United States v. Quinn*, 901 F.2d 522 (6th Cir. 1990), is still another case adhering to the general practice announced in *Orrico* and followed in *Aarons*. In *Quinn*, this court reversed the defendant's conviction because the trial court admitted testimony provided by a witness at an earlier suppression hearing despite the government's failure to show that the witness was unavailable at the time of trial. *Id.* at 529. The court recognized, however, that it still needed to address Quinn's insufficiency-of-the-evidence claim because, "if retrial is to be had, the evidence must be found legally sufficient, as a matter of federal law, to sustain the jury verdict." *Id.* at 529 n.5 (quoting *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 321-22 (1984) (Brennan, J., concurring in part and concurring in the judgment) (quotation marks omitted). Applying the standard from *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (holding that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier

of fact could have found the essential elements of the crime beyond a reasonable doubt") (emphasis in original), this court concluded that the evidence was sufficient to support a verdict and that a second trial would not violate the Double Jeopardy Clause. *Quinn*, 901 F.2d at 531.

Our decision in *Patterson I* unquestionably constituted a deviation from the general rule as stated and applied in the above cases. We were presented with the precise scenario faced by the *Orrico* court, one where the trial court's error in instructing the jury would alone have required a remand for a new trial. But instead of reaching Patterson's challenge to the sufficiency of the evidence, as did the court in *Orrico*, we decided to "rest our reversal" of the involuntary manslaughter conviction on the erroneous jury instruction. *See Orrico*, 599 F.2d at 119 n.5. Had we followed the procedure set forth in *Aarons*, moreover, we would have reached the propriety of the jury instruction only after confirming that the evidence presented by the state at the first trial passed constitutional muster and that a retrial would not be barred under *Burks*. *See Aarons*, 718 F.2d at 189 n.1. We now belatedly recognize that we erred in not deciding whether the state introduced sufficient evidence to prove that Patterson was guilty of involuntary manslaughter based on child endangering before giving the state a second chance to prove that crime to a properly instructed jury.

One case—and, as far as we are aware, only one case—stands as an exception to the general rule that this court will as a matter of course review a sufficiency challenge properly brought before it. That case is *United States v. Davis*, 873 F.2d 900 (6th Cir. 1989). In *Davis*, the defendant had been convicted of violating the federal mail fraud statute based upon a legal theory that was invalidated by the Supreme Court while his direct appeal was pending. *Id.* at 902. His appeal challenged not only the validity of that theory, but also the sufficiency of the evidence presented by the government at trial. In an unpublished, per curiam opinion, this court reversed Davis's conviction on the former ground without reaching the insufficiency claim and without explaining why it did not reach that claim. *United States v. Davis*, No. 86-4076, 1988 WL 19175, at \*3 (6th Cir. March 8, 1988). The government then secured a superseding indictment on an alternative theory, and Davis moved to dismiss the new indictment on double jeopardy grounds. 873 F.2d at 903. After the district court denied his motion, Davis filed an interlocutory appeal in this court.

This court first rejected the contention that the initial reversal due to "a legal defect in the indictment" terminated jeopardy and barred a subsequent trial under a new indictment. *Id.* at 904. Explaining that the Supreme Court in *Burks* had specifically recognized that the failure to dismiss a faulty indictment was a "trial error" that did not preclude retrial, the *Davis* court held that the defective indictment used to try Davis was similarly a "trial error" whose "rectification . . . has never been thought to be precluded by the Double Jeopardy Clause." *Id.*

Davis also argued, however, that the original panel's "failure to make a specific finding on the sufficiency of the evidence ought to bar any retrial." *Id.* at 907. This court began its analysis by recognizing that its prior decision constituted a departure from the rule recited in both *Orrico* and *Delk*. *Id.* (We note that the *Davis* court did not cite the published decision in *Aarons*.) The *Orrico* and *Delk* cases were distinguishable, in the court's view, because neither one

> deal[t] with a situation where the defendant had been tried on an indictment incorporating a legal theory that had turned out to be invalid. We faced just such a situation on the earlier appeal here—and it would have been pointless for us to sift through several days' worth of trial evidence to determine whether the evidence would have been sufficient to support a conviction under the "intangible rights" theory if the Supreme Court had not already rejected that theory.

*Id.* The court further explained that it had no need to decide whether the evidence would have been sufficient under other theories of liability cognizable under the mail fraud statute because there was

no guarantee "that the government would ultimately decide to reindict," and because "considerations of judicial economy counseled" against undertaking an analysis that might be unnecessary. *Id.* What the *Davis* court did, then, was decline to address the sufficiency challenge where it was reversing the conviction on another ground that would independently preclude retrial on the same legal theory.

    *Davis* is readily distinguishable from the situation that was before us in *Patterson I*. The original panel in *Davis* reviewed a conviction that was based on a legal theory that had been repudiated by the Supreme Court after the defendant's trial. As a result of the intervening Supreme Court ruling in *McNally v. United States*, 483 U.S. 350 (1987), there was no chance that Davis could be retried for using the mail system to defraud others of their intangible property rights. The question of whether the government had introduced constitutionally sufficient evidence at the first trial was therefore completely irrelevant to whether Davis could be retried under a different theory and a new indictment.

    But unlike in *Davis*, our decision in *Patterson I* did not rest on a ground that *independently* precluded retrial on the theory of involuntary manslaughter based on child endangerment. An erroneous jury instruction is a trial error, *California v. Roy*, 519 U.S. 2, 5 (1996) (per curiam), and a reversal on the basis of a trial error does not preclude retrial on the same charge. *Burks*, 437 U.S. at 14. We therefore cannot say, as the *Davis* court did, that reviewing the sufficiency of the evidence would have been "pointless." *See* 873 F.2d at 907. The "point" of such a review, stated simply, would have been to determine whether retrial was permissible under *Burks*. Had we concluded that the Ohio state courts unreasonably applied *Jackson v. Virginia* in upholding the jury verdict, Patterson could not have been retried on the charges at issue. *See Burks*, 437 U.S. at 18. The original *Davis* panel's refusal to address the sufficiency challenge did not subject the defendant to a retrial on the same charge; ours did.

    *Davis* is therefore properly read as carving out a narrow exception of limited application. Indeed, we fail to see how *Davis* can be construed any more broadly than as holding that a court of appeals need not consider an insufficiency-of-the-evidence claim where the court also reverses the conviction on another ground that independently precludes retrial on the same charges. That holding, understood in this manner, is consistent with this court's prior cases, which have refused to remand for a retrial on charges that the government failed to prove beyond a reasonable doubt the first time around. After all, underlying the Supreme Court's holding in *Burks* is the principle that "[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." 437 U.S. at 11. Our decision in *Patterson I*, unlike the one in *Davis*, gave the state just such an opportunity.

    The decision in *Davis* does, however, make clear that the practice of reviewing sufficiency challenges is not an inexorable command. In other words, just as this court in the wake of *Burks* adopted the *Orrico* rule in order to protect constitutional rights, future panels could deviate from that rule where they deemed its application unnecessary to protect those rights or, as in *Davis*, where applying the rule would be "pointless." *Davis*, 873 F.2d at 907. Thus, had we intended in *Patterson I* to follow *Davis*'s lead and to carve out another exception to the general practice in this circuit, we could have done so. But the truth is that we intended nothing of the kind. Our one-paragraph discussion did not cite *Davis* (or any other case, for that matter) and instead hewed closely to the factual setting before us. To recast our decision as a conscious and purposeful departure from a longstanding practice would thus be disingenuous.

    What we attempted to do, quite frankly, was to avoid passing on an extremely close issue that would have forced us to delve deeply into the incomplete state-court trial record provided in the Joint Appendix and decide, even if we believed that the state courts had erred, whether their error was sufficiently grave to warrant habeas relief. Our desire to avoid the panel disagreement that

might have resulted from undertaking this difficult task, while understandable, does not suffice to justify our failure to adhere to a consistent practice whose aim is to protect a defendant's constitutional rights and to prevent the government from having a second bite at the apple. In other words, we should not have pretermitted Patterson's claim simply because resolving it would have been difficult or divisive. *See United States v. Bobo*, 419 F.3d 1264, 1268 n.4 (11th Cir. 2005) ("Although evaluating the sufficiency of the evidence could prove problematic in cases like this one, in which the indictment itself is defective, our prudential rule still applies and should have been followed.").

### 2.          *Our error did not subject Patterson to an unconstitutional retrial*

Having explained above that the general rule in this circuit that we failed to follow was based on double jeopardy concerns, the question then becomes whether our failure to address Patterson's insufficiency-of-the-evidence claim subjected him to an unconstitutional retrial. We pose this question because the availability of relief for Patterson at this late date turns in large degree on just how serious an error we committed. Based on the Supreme Court's decision in *Richardson v. United States*, 468 U.S. 317 (1984), and the reaction of our sister circuits to that decision, we are convinced that Patterson has not been subjected to an unconstitutional retrial.

In *Richardson*, the jury acquitted the defendant on one count of distributing a controlled substance, but was unable to reach a verdict both as to another distribution count and a third count alleging that he conspired to distribute controlled substances. *Id.* at 318-19. The district court declared a mistrial and ordered a new trial on the two remaining counts, rejecting Richardson's argument that the retrial would violate the Double Jeopardy Clause because the evidence introduced at the first trial was insufficient to support a conviction on either of the remaining counts. *See id.* After the D.C. Circuit dismissed Richardson's interlocutory appeal for lack of jurisdiction, the Supreme Court granted review to resolve a conflict among the circuits with respect to the jurisdictional issue. *Id.* at 320 & nn. 3-4.

The Court first reversed the D.C. Circuit's jurisdictional ruling, holding that the rejection by the district court of Richardson's motion to dismiss was appealable under the decision in *Abney v. United States*, 431 U.S. 651 (1977). *Richardson*, 468 U.S. at 320. In reaching the merits of Richardson's double jeopardy claim, the Court explained the import and reach of the *Burks* rule. *Burks*, the Court said, "held that once a defendant obtained an unreversed appellate ruling that the Government had failed to introduce sufficient evidence to convict him at trial, a second trial was barred by the Double Jeopardy Clause." *Id.* at 323. But the defendant in *Richardson* had not secured such a ruling, since the district court had declared a mistrial and ordered a new trial on the two remaining counts, and the court of appeals had declined to exercise jurisdiction. In that situation, where "there has been only a mistrial resulting from a hung jury, *Burks* simply does not require that an appellate court rule on the sufficiency of the evidence because retrial might be barred by the Double Jeopardy Clause." *Id.* The Court thus concluded that, "[r]egardless of the sufficiency of the evidence" at his first trial, Richardson had "no valid double jeopardy claim to prevent his retrial." *Id.* at 326.

Justice Brennan's partial dissent highlighted some of the anomalous results to which the Court's opinion could lead. He reasoned as follows:

> Apparently, under the Court's approach, only an actual judgment of acquittal, or an unreversed conviction, would terminate jeopardy and thereby bar retrial. Accordingly, a defendant who is constitutionally *entitled to an acquittal* but who fails to receive one—because he happens to be tried before an irrational or lawless factfinder or because his jury cannot agree on a verdict—is worse off than a defendant tried before a factfinder who demands constitutionally sufficient evidence.

Indeed, he is worse off than a *guilty* defendant who is acquitted due to mistakes of fact or law. I do not believe this paradoxical result is faithful to the principle we have repeatedly reaffirmed that the Double Jeopardy Clause precludes retrial where the State has failed as a matter of law to prove its case despite a fair opportunity to do so.

*Id.* at 327-28 (Brennan, J., concurring in part and dissenting in part) (emphasis in original) (citation and quotation marks omitted). The decision in *Richardson*, as Justice Brennan recognized, makes clear that a retrial is not barred by *Burks* unless and until an appellate court enters judgment reversing a conviction on the ground that the evidence was insufficient to support the conviction. In other words, what activates the *Burks* rule is *not* the abstract possibility that the evidence was insufficient, but the appellate court's declaration to that effect. Absent such a declaration, jeopardy continues, and the defendant can be tried once again on the same charges.

Patterson's 2004 retrial did not violate the Double Jeopardy Clause as that provision was construed in *Richardson*. Our failure to address Patterson's sufficiency challenge on the merits foreclosed the possibility of his receiving what he would have needed to invoke the *Burks* rule—an appellate court's holding that the evidence at his first trial was in fact insufficient to support his conviction. *See* 468 U.S. at 323. Because we never actually held that the evidence presented at the first trial was insufficient to support a conviction for involuntary manslaughter based on child endangering, the protection afforded by *Burks* never kicked in. Patterson's retrial was therefore permissible under governing double jeopardy principles.

The conclusion that we reach is one that Justice Brennan predicted with a sense of foreboding in his partial dissent in *Richardson*. Justice Brennan was concerned that appellate courts "could remand for retrial without addressing the insufficiency claim and the defendant would never be able to challenge the evidence at the first trial." *Id.* at 331. That is precisely the effect that our decision in *Patterson I*, when combined with *Richardson*, has on Patterson's case. We declined to address his challenge on the merits in his first appeal, refused again when he petitioned for rehearing, and, as will be explained in Part II.B. below, ultimately conclude that we cannot do so now.

Notwithstanding the unsatisfying result produced by our conclusion, both *Richardson* itself and our sister circuits' interpretation of that decision persuade us that this conclusion is the one required by existing law. We find particularly instructive the Seventh Circuit's decision in *United States v. Douglas*, 874 F.2d 1145 (7th Cir. 1989), a direct criminal appeal that nonetheless has a procedural posture similar to that of the present case. The defendants in *Douglas* were convicted by a jury of both conspiring to distribute and actually distributing cocaine and heroin. They challenged on appeal the sufficiency of the evidence presented by the government, as well as the propriety of the jury instructions. *Id.* at 1148-49. The Seventh Circuit vacated the convictions on the latter ground, but declined to address the sufficiency challenge even after the defendants reasserted the claim in a petition for rehearing. *Id.* at 1149. After the defendants were convicted on remand, they again appealed, arguing this time that their retrial should have been barred under the Double Jeopardy Clause because the evidence was insufficient at the first trial. *Id.*

The Seventh Circuit began its analysis by noting that, although other circuits had previously "held that a reviewing court *cannot* refuse to address a defendant's challenge to the sufficiency of the evidence offered at trial," the Seventh Circuit had never addressed the question. *Id.* (emphasis in original) (citing cases from the Third, Ninth, and Tenth circuits). Moreover, the court observed, the Supreme Court "has never held that a reviewing court must review the sufficiency of the evidence whenever the defendant raises the issue on appeal." *Id.* at 1150. In the *Douglas* court's view, the Supreme Court had come closest to addressing that question in *Richardson*, where both its reasoning and holding indicated "that at least where a first prosecution ends in a mistrial or hung

jury, a defendant is not entitled to a review of the sufficiency of the evidence presented at trial before a second trial on the same charges begins." *Id.* The Seventh Circuit proceeded to acknowledge the force of Justice Brennan's argument in dissent, but nevertheless concluded that *Richardson* had effectively rejected the argument "that the Double Jeopardy Clause *compels* an appellate court to review the sufficiency of the evidence offered at trial anytime a defendant raises the question." *Id.* (emphasis added).

Similar reasoning is found in the Fifth Circuit's decision in *United States v. Miller*, 952 F.2d 866 (5th Cir. 1992). The defendants' convictions in *Miller* were reversed on appeal on the ground that the jury instructions would have permitted the jury to convict them on a theory of mail fraud that the Supreme Court had invalidated in *McNally v. United States*, 483 U.S. 350 (1987). *See* 952 F.2d at 868. After their retrial again resulted in convictions, the defendants argued on appeal that the retrial should have been barred by the Double Jeopardy Clause, in part because "the evidence at the first trial was insufficient to support a conviction on a valid mail fraud theory." *Id.* at 871. The Fifth Circuit recognized that prior circuit precedent lent some support to the defendants' contention that they were entitled to a sufficiency review on the second appeal, but concluded that the Supreme Court's decision in *Richardson* had abrogated that precedent. As the *Miller* court explained:

> The central concept of *Richardson* is that there is no *double* jeopardy unless the original jeopardy has *terminated*; and it is abundantly clear that a reversal for instructional error is no more a termination of jeopardy than a mistrial where a jury is unable to agree. And it is evident that the implications of *Richardson* for a case such as this one did not escape the attention of the *Richardson* court.

*Id.* at 872 (emphasis in original) (referring to the consequences identified Justice Brennan in his separate opinion in *Richardson*, 468 U.S. 327-31). Because the original reversal rested on erroneous jury instructions, the Fifth Circuit held that jeopardy had never terminated and that the defendants could be retried consistent with the Double Jeopardy Clause. *Miller*, 952 F.2d at 874.

The same conclusion follows in the present case. As in *Miller*, our decision to invalidate Patterson's conviction rested exclusively on the ground that the jury instructions were constitutionally deficient. But this "instructional error" did not constitute a jeopardy-terminating event. *See id.* Consequently, Patterson's second trial did not violate the Double Jeopardy Clause, and a third trial is permissible for the same reasons.

We cannot end our discussion of *Douglas* and *Miller*, however, without emphasizing a second key aspect of those decisions, one that brings us back to our analysis in Part II.A.1. above about the importance of addressing insufficiency-of-the-evidence claims properly before this court. After concluding that the Double Jeopardy Clause did not compel appellate courts "to review the sufficiency of the evidence at trial anytime a defendant raises the question," the Seventh Circuit nevertheless adopted "a policy in [that] circuit of routinely addressing evidentiary sufficiency in criminal cases when a defendant presents the issue on appeal." *Douglas*, 874 F.2d at 1150. The court did so, it explained, not just because of the Double Jeopardy Clause, but because of its "concern for preservation of scare and costly resources." *Id.* Having established that policy, the *Douglas* court then reached back in time to evaluate the sufficiency of the evidence presented at the defendants' first trial in order to determine whether the court's "failure to evaluate the evidence on the first appeal" had subjected them to double jeopardy. *Id.* at 1151. Only after concluding that the evidence introduced at the first trial had in fact been sufficient did the Seventh Circuit consider the defendants' challenges to their convictions on retrial.

Similarly, the Fifth Circuit in *Miller* recognized the wisdom of such a policy even while concluding that it was not constitutionally required. The *Miller* defendants pointed to a number of

post-*Richardson* cases, including this court's decision in *Quinn*, 901 F.2d at 529, in support of their argument "that a defendant is entitled to a review of the sufficiency of the evidence at the first trial prior to retrial." 952 F.2d at 872. But the Fifth Circuit concluded that the cases cited held "only that an appellate court should, or in the exercise of its discretion normally will, review the sufficiency of the evidence as well even if it has already determined that a conviction must be reversed on other grounds." *Id.*

"Far from holding that a review of [a sufficiency challenge] can be had later if a conviction is reversed on other grounds," the *Miller* court continued, "these cases indicate that the sufficiency of the evidence will be reviewed in the first appeal *in order* to prevent defendants from having to face a second trial where there was insufficient evidence to convict at the first trial." *Id.* at 873 (emphasis in original). The Fifth Circuit thus concluded that, "[a]lthough not mandated by the double jeopardy clause, . . . the better practice [is] for the appellate court on an initial appeal to dispose of any claim properly presented to it that the evidence at trial was legally insufficient to warrant the thus challenged conviction." *Id.* at 874.

What *Douglas* and *Miller* make clear, therefore, is that this court's longstanding prudential practice of reviewing the sufficiency of the evidence despite reversing a conviction on other grounds was *not* undermined by the Supreme Court's decision in *Richardson*. Indeed, despite reading the implications of *Richardson* broadly, both the Fifth and Seventh Circuits adopted a practice identical to the one that this court has employed since 1979. That practice remains the law of both of those circuits—and our circuit—today. *See United States v. Moses*, 94 F.3d 182, 188 (5th Cir. 1996) ("In cases where the reversal permits the Government to retry the defendant, we must reach a sufficiency of the evidence argument because the Government may not retry the defendant if the evidence at trial was insufficient."); *United States v. Anderson*, 896 F.2d 1076, 1078 (7th Cir. 1990) (applying the rule set forth in *Douglas*).

Other circuits likewise adhere to an analogous "prudential rule" that is designed "to avoid potential double jeopardy problems,"and that requires them "to review sufficiency of the evidence claims raised by defendants, even if resolution on alternative grounds would otherwise dispose of the case." *United States v. Bobo*, 419 F.3d 1264, 1268 (11th Cir. 2005); *see also United States v. McDermott*, 64 F.3d 1448, 1454 (10th Cir. 1995) ("[T]he law of this circuit compels us to review claims of insufficient evidence prior to remanding for a new trial because of procedural error."); *United States v. Bishop*, 959 F.2d 820, 828 & n.11 (9th Cir. 1992) (reaffirming after *Richardson* the Ninth Circuit's policy of reviewing sufficiency challenges despite "[t]he existence of other grounds for reversal") (citation and quotation marks omitted) (alteration in original).

In sum, when we declined to address Patterson's insufficiency-of-the-evidence claim in our prior opinion, we deviated from a practice that has been (and remains) the law in this circuit and most others for the better part of the last 25 years. But our error did not subject Patterson to a retrial that violated his double jeopardy rights, even assuming that we would have determined that the evidence was indeed insufficient (a determination that is by no means certain). With this understanding of our decision in *Patterson I* established, we address whether we may now reach the sufficiency challenge that we declined to address in 2003.

**B.** **We cannot reach Patterson's challenge to the sufficiency of the evidence at his first trial either under the law-of-the-case doctrine or by recalling the mandate**

Our conclusion that we should have taken up Patterson's challenge to the sufficiency of the evidence in our prior decision leads to a thornier question—whether we have the power to reach the issue now. Patterson maintains that law-of-the-case principles allow us to address his claim because our failure to do so earlier was a clear departure from circuit precedent and would work a manifest injustice. The state counters that law-of-the-case principles do not apply, that the only way to

revisit our prior ruling would be by recalling the mandate, and that recalling the mandate under these circumstances would be an abuse of discretion.  We address these contentions in turn.

### 1.     *The law-of-the-case doctrine is not a proper basis for revisiting Patterson's sufficiency claim*

Patterson argues that this court's authority to review its earlier decision resides in a federal court's "power to revisit prior decisions of its own . . . in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (citation omitted).  But the cited passage from *Christianson*, as well as the Ninth Circuit cases on which Patterson relies, refer to circumstances fundamentally different than the ones confronting us in the present case.  The cases in question address the situation in which an appellate court incorrectly resolves a legal issue that reappears at a later stage of the same litigation, *but prior to final judgment.  See Mendenhall v. Nat'l Transp. Safety Bd.*, 213 F.3d 464, 467-69 (9th Cir. 2002) (revisiting and reversing the panel's earlier conclusion that it had the authority to order the payment of certain attorney fees after an agency on remand applied the panel's first ruling on the issue); *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764, 787-88 (9th Cir. 2000) (concluding on appeal, after a remand, that the prior panel's determination that the defendants had waived a statute-of-limitations defense was "clearly erroneous"), *aff'd*, 535 U.S. 302 (2002).

In other words, the above cases illustrate the prudential nature of the law-of-the-case doctrine, which "states that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).  The Ninth Circuit in both *Mendenhall* and *Tahoe-Sierra* acknowledged that its ability to undo the effects of prior rulings rested on the flexibility of the law-of-the-case doctrine, which "directs a court's discretion, it does not limit the tribunal's power." *Mendenhall*, 213 F.3d at 469 (citation and quotation marks omitted).

But the law-of-the-case doctrine does not apply to circumstances such as those in the present case.  As Professors Wright, Miller, and Cooper have explained:

> Law-of-the-case rules . . . do not involve preclusion by final judgment; instead, they regulate judicial affairs *before final judgment*.  After final judgment, direct relief from judgment is governed by the rules governing direct and collateral attack—principally found in Civil Rule 60(b) and habeas corpus and the procedure to vacate a criminal sentence—rather than law of the case or res judicata.

18B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4478 (2d ed. 2002) (emphasis added).

Our opinion in *Patterson I* constitutes a "final judgment" because the grant of a conditional writ of habeas corpus is treated as a final order.  *See, e.g., Browder v. Illinois Dep't of Corrections*, 434 U.S. 257, 265-67 (1978) (holding that a district court's order granting a conditional writ was "final" even though the court had not decided, as was then required by statute, whether an evidentiary hearing was necessary); *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006) ("Conditional grants of writs of habeas corpus are final orders . . . and they ordinarily and ideally operate automatically, that is, without the need for the district court to act further.") (citation omitted); *Phifer v. Warden*, 53 F.3d 859, 862 (7th Cir. 1995) (observing that "[c]onditional orders . . . are ordinarily considered 'final,'" and collecting cases supporting that proposition in the habeas context).

Because the *Patterson I* opinion is a final judgment in a habeas case, Patterson cannot obtain relief from that judgment simply by invoking the flexibility of the law-of-the-case doctrine. He must instead satisfy the criteria set forth in "the rules governing . . . collateral attack" of a state conviction. *See* 18B Wright, Miller & Cooper § 4478. As will be discussed below, the proper inquiry under governing habeas jurisprudence is whether recalling the mandate in order to correct an erroneous prior decision would be an abuse of our discretion.

### 2.          *Recalling the mandate would constitute an abuse of discretion*

"[C]ourts of appeals," as Judge Posner has explained, "have asserted the power . . . to recall a mandate, in effect reopening the case, without limit of time, although only in exceptional circumstances." *Patterson v. Crabb*, 904 F.2d 1179, 1180 (7th Cir. 1990); *see also United States v. Saikaly*, 424 F.3d 514, 517 (6th Cir. 2005) ("Although courts of appeals have the inherent authority to recall a mandate, such power should only be exercised in extraordinary circumstances because of the profound interests in repose attached to a court of appeals mandate."); 16 Wright, Miller, & Cooper, Federal Practice and Procedure § 3938 ("The power of a court of appeals to recall its mandate once issued has long been recognized."). The Supreme Court has described the power to recall a mandate as an "inherent" one that is "subject to review for an abuse of discretion." *Calderon v. Thompson*, 523 U.S. 538, 549 (1998) (citation omitted). Use of this "inherent" recall power is necessarily circumscribed, however, because of "the need to preserve finality in judicial proceedings." *Sargent v. Columbia Forest Prods.*, 75 F.3d 86, 89 (2d Cir. 1996).

This court has held that "one seeking recall of a mandate must demonstrate good cause for that action through a showing of exceptional circumstances," including, but not limited to "fraud upon the court, clarification of an outstanding mandate, [or] correction of a clerical mistake." *BellSouth Corp. v. FCC*, 96 F.3d 849, 851-52 (6th Cir. 1996) (declining to recall its mandate where an agency's delay in implementing the court's order adversely affected a private company); *see also United States v. Murray*, 2 F. App'x 398, 399-400 (6th Cir. 2001) (unpublished) (calling the enumeration of factors in *BellSouth* "a nonexhaustive list of circumstances that are extraordinary enough to warrant a recall of a mandate"). In *Murray*, the court recalled its mandate over seven months after its original decision and three months after the Supreme Court had denied Murray's petition for certiorari. The court reasoned that the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which was issued one month after the panel entered judgment, "call[ed] into question the 'integrity' of" the earlier panel decision and amounted to "extraordinary" circumstances that merited recall of the mandate. 2 F. App'x at 400 (citing *Zipfel v. Halliburton Co.*, 861 F.2d 565, 567 (9th Cir. 1988)).

As the *BellSouth* court observed, other circuits have similarly applied the "exceptional circumstances" standard regarding the recall of a mandate. 96 F.3d at 851-52 (citing cases from the Second, Fifth, Ninth, and D.C. circuits). Those courts have agreed with Professors Wright, Miller, and Cooper that the recall power is to be "exercised sparingly." 16 Wright, Miller & Cooper, Federal Practice and Procedure § 3938. The Supreme Court in *Calderon* also endorsed the "extraordinary circumstances" standard, labeling the recall power as "one of last resort, to be held in reserve against grave, unforeseen contingencies." 523 U.S. at 550.

*Calderon* is the only case in which the Supreme Court has addressed the power of a court of appeals to initiate a recall of its mandate sua sponte. *See id.* at 549-559. We will therefore address that decision's implications and procedural history in some detail. In 1996, a panel of the Ninth Circuit reversed the district court's grant of habeas relief to Thompson, a California death-row inmate, and reinstated his death sentence. *Thompson v. Calderon*, 109 F.3d 1358, 1365 (9th Cir. 1996). Thompson's petition for rehearing en banc was denied, and the state set an execution date. *Calderon*, 523 U.S. at 546. Less than two weeks before that date, Thompson sought relief from judgment in the district court and filed a motion requesting that the Ninth Circuit recall its mandate.

*Id.* The court of appeals denied that motion, but two days later, the full court voted sua sponte to hear the matter en banc. *Id.* at 547.

Just two days before Thompson's execution date, a divided en banc panel of the Ninth Circuit issued a decision recalling the earlier mandate and reinstating the initial district court judgment that had vacated Thompson's death sentence. *Id.* The court attributed its failure to act earlier to "procedural misunderstandings by some judges"—to wit, miscommunications during a law-clerk transition in one judge's chambers and another judge's oversight of the initial en banc petition—and found those failures sufficient to constitute "extraordinary circumstances." *See id.* at 550-51 (citation and quotation marks omitted). This decision was released 53 days after the mandate had issued, almost a year after Thompson had filed his first request for rehearing en banc, and almost 16 years after the murder for which he had been convicted. *Id.* at 548-49.

The Supreme Court, by a majority of five to four, reversed. Observing that the Ninth Circuit's actions "rest[ed] on the most doubtful of grounds," *Calderon*, 523 U.S. at 551, the Court then explained that the recall of a mandate in the habeas context must also be measured "against the statutory and jurisprudential limits applicable in habeas corpus cases." *Id.* at 553. This was true, the Court said, even though the statutory restrictions governing successive petitions did not apply to the Ninth Circuit's sua sponte decision to recall its mandate. *Id.* at 554. Courts of appeals, then, must exercise their discretion to recall a mandate "guided by the general principles underlying [the Court's] habeas corpus jurisprudence," even where the restrictions imposed by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2244, do not formally apply. *Id.*

The Supreme Court focused on a state's particular interest in the finality of criminal convictions, and announced the following general rule: "[W]here a federal court of appeals *sua sponte* recalls its mandate to revisit the merits of an earlier decision *denying* habeas corpus relief to a state prisoner, the court abuses its discretion unless it acts to avoid a miscarriage of justice as defined [the Court's] habeas corpus jurisprudence." *Id.* at 558 (emphasis added). Applying that rule to the facts before it, the Court then found that the Ninth Circuit had not acted to avoid a miscarriage of justice, which the Court's cases characterize as "actual as compared to legal innocence." *Id.* at 559 (quoting *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

Whether the general rule announced by the Supreme Court in *Calderon* actually controls in the present case is far from clear. The *Calderon* rule, by its own terms, applies where an appellate court recalls its mandate to revisit "an earlier decision denying habeas corpus relief to a state prisoner." *Id.* at 558. In his first appeal, Patterson sought an unconditional writ ordering his release because the evidence at his first trial was allegedly insufficient, or alternatively a conditional writ that would secure his release unless the state retried him within a set period of time. By declining to evaluate the sufficiency of the evidence, we did not technically "deny" him the relief that he had sought on that ground. But our decision to instead grant Patterson only a conditional writ *had the effect* of denying him the primary relief that he had requested. So the *Calderon* rule may well apply here. If it does, then we have no basis to recall the mandate, since Patterson's argument throughout these proceedings has been that he is legally innocent, not that he is actually innocent. *See id.* at 558-59.

But even if the rule announced in *Calderon* does not apply, other aspects of the Supreme Court's reasoning in that case and its more recent decision in *Bell v. Thompson*, 545 U.S. 794, 125 S. Ct. 2825 (2005), strongly suggest that recalling the mandate under the present circumstances would be an abuse of our discretion. The Court in *Calderon*, for example, emphasized that "[t]he promptness with which a court acts to correct its mistakes is evidence of the adequacy of its grounds for reopening the case." 523 U.S. at 552. In that case, the Court chided the Ninth Circuit for acting four months after the alleged procedural problems in the en banc process had occurred. *See id.* If we recall the mandate here, we will be acting to correct our error over three years after our original

decision and almost ten years after Patterson's original state-court conviction. *Cf. Bottone v. United States*, 350 F.3d 59, 64 (2d Cir. 2003) ("Under *Calderon*, recalling the mandate more than six years after its issuance 'just to apply the benefit of hindsight,' would constitute an abuse of discretion.") (quoting *Gray-Bey v. United States*, 209 F.3d 986, 988 (7th Cir. 2000)).

The passage of time also played a central role in the Supreme Court's decision in *Bell v. Thompson*. There, the Court reversed a decision in which this court initially denied habeas relief, withheld issuance of the mandate, and later reversed itself in order to grant habeas relief. *See Thompson v. Bell*, 373 F.3d 688, 691-92 (6th Cir. 2004). The Supreme Court assumed without deciding that this court's actions were permitted by the Federal Rules of Appellate Procedure, but held that the court had abused its discretion by waiting seven months after the Court's denial of certiorari to issue an amended opinion reversing its prior disposition. *Bell*, 125 S. Ct. at 2832.

We read the Supreme Court's decision in *Bell* as turning on four factors. The first was "the length of time between [the] denial of certiorari and the Court of Appeals' issuance of its amended opinion." *Id.* Second and relatedly, the seven–month delay caused the state to act in reliance on the appellate court's earlier opinion and order. Believing that habeas relief had been definitively denied, the state secured a date for Thompson's execution and litigated his competency to be executed in both state and federal court. *See id.* at 2832-33. The third factor emphasized by the Court was that the amended opinion adopted arguments that had previously been presented in Thompson's petition for rehearing or rehearing en banc. *Id.* at 2833. Finally, the Court returned to the concerns of federalism, comity, and finality at the heart of its ruling in *Calderon*, reasoning that those concerns applied even in the slightly different procedural posture of *Bell*. Although it was "respectful of the Court of Appeals' willingness to correct a decision that it perceived to have been mistaken," the Supreme Court nevertheless concluded that this court's action was not "consistent with the 'State's interest in the finality of convictions that have survived direct review within the state court system.'" *Id.* at 2836-37 (quoting *Calderon*, 523 U.S. at 555)).

All four of the above factors cut decisively against recalling the mandate in the present case. As to the first, the three years plus that have passed since our decision in *Patterson I* far exceeds the seven months that this court waited in *Bell*. Second, the state of Ohio, like the state of Tennessee in *Bell*, has engaged in significant action in reliance on our ruling in *Patterson I*. The state has expended substantial time and resources in deciding whether to retry Patterson, conducting the second trial, preparing for a third trial, and litigating its ability to proceed with that third trial before the federal courts. These actions are directly analogous to the ones that the Supreme Court in *Bell* found to be illustrative of the state's important reliance interest. *See* 125 S. Ct. at 2832-33.

The third and fourth factors identified in *Bell* are even more damaging to Patterson's appeal. Were we to revisit the sufficiency challenge presented in *Patterson I*, we would be doing so on the basis of a rule already brought to our attention in a timely-filed petition for panel rehearing. The same was true in *Bell*, where the Supreme Court pointed to this court's "opportunity to consider [Thompson's] arguments at the rehearing stage [as] yet another factor supporting [its] determination that the decision to withhold the mandate was in error." *Id.* at 2833.

Finally, "the finality and comity concerns that animated *Calderon*" and also influenced the outcome in *Bell* are likewise implicated in the present case. *See id.* at 2836. The *Bell* Court respected this court's "willingness to correct a decision that it perceived to have been mistaken," but nonetheless found the panel's issuance of a new opinion reversing itself seven months after the denial of certiorari constituted an abuse of discretion. *Id.* at 2836-37. We believe that the same conclusion is applicable in the present case, where our failure to address Patterson's challenge to the sufficiency of the evidence was an error, but one that did not actually subject him to an unconstitutional retrial. *See* Part II.B.2. above. Stripped to their essence, *Calderon* and *Bell* teach that the decision to recall the mandate must account for "the State's interest in the finality of

convictions" and the "considerable time and resources" expended by the state in prosecuting Patterson and defending the resulting conviction in the court systems. *See Bell*, 125 S. Ct. at 2837 (citing *Calderon*, 523 U.S. at 555)). To recall the mandate at this late date, despite the "additional presumption against" doing so in state-habeas cases, *id.* at 2836, would denigrate those interests and constitute an abuse of discretion in the Supreme Court's view.

In the end, we believe that the Supreme Court's decisions in *Calderon* and *Bell* are an insurmountable obstacle to relief for Patterson. Indeed, though neither case has facts on all fours with those of the present case, both squarely address situations in which courts of appeals have attempted to reach back in time to correct a decision that they later believed to be mistaken. We simply cannot ignore the fact that the Supreme Court has twice reacted to these good-faith efforts on the part of the appellate courts by reversing their judgments. A similar decision in this case would likely provoke the same reaction. For that reason and the others set forth above, we conclude that recalling the mandate in order to reach Patterson's insufficiency-of-the-evidence claim would be an abuse of our discretion.

### 3.      *What should we have done in* Patterson I*?*

We briefly address one last issue that relates to our handling of Patterson's first appeal and that may help avoid cases like his in the future. Specifically, we address the question of what we should have done in 2003. We believe that the Tenth Circuit's decision in *United States v. Haddock*, 961 F.2d 933 (10th Cir. 1992) (*Haddock II*), provides solid guidance. The defendant in *Haddock* was convicted after a jury trial of misapplying bank funds, bank fraud, and making false statements to governmental agencies. *United States v. Haddock*, 956 F.2d 1534, 1538 (10th Cir. 1992) (*Haddock I*). He appealed his conviction and sentences on numerous grounds, alleging both trial errors and that the evidence was insufficient to support his convictions on five of the counts. *Id.* The Tenth Circuit affirmed Haddock's convictions on most counts, but held that erroneous jury instructions entitled him to a new trial on Counts 1 and 8. *Id.* at 1538. When the court reached his challenge to the sufficiency of the evidence, however, it failed to analyze the evidence with respect to Count 1—one of the counts on which it was ordering a new trial. "Because we reverse Haddock's conviction on Count 1 and remand for new trial on that count," the court reasoned, "we do not consider whether evidence was sufficient to convict on that count." *Id.* at 1549.

Haddock then filed a petition for rehearing, pointing to the longstanding rule in the Tenth Circuit that when the court of appeals reverses due to a trial error and remands for a new trial, the court "nevertheless must address the defendant's claim that evidence presented at trial on the reversed count was insufficient." *Haddock II*, 961 F.2d at 934. Although noting that other circuits had recently refused to consider such a rule mandatory after the Supreme Court's decision in *Richardson* (discussed above), the Tenth Circuit granted Haddock's petition for rehearing and evaluated the sufficiency of the evidence on Count 1. *Id.* at 934 & n.1. The court then held that the evidence presented by the government at the first trial was sufficient to support a conviction on that count, and that Haddock could be retried. *Id.* at 935-36.

We should have followed the same procedure and granted Patterson's timely petition for panel rehearing in 2003. Like the defendant in *Haddock*, Patterson alerted us to binding circuit precedent that instructed us to address the insufficiency-of-the-evidence claim despite our decision to issue a conditional writ whose practical result was the same as the retrial ordered in *Haddock*. The state, in its response to the petition, did not dispute the existence of this rule or argue that the Supreme Court's decision in *Richardson* had undermined its validity. Furthermore, addressing the challenge in an amended opinion would not have made Patterson any worse off than he was after our initial decision. If we had found his challenge meritorious, the state would not have been permitted to retry him on the count of conviction. But even if we had rejected his challenge, our issuance of a conditional writ would have remained intact, entitling him to a new trial with jury

instructions that complied with due process requirements. The most efficacious solution, in short, would have been to grant Patterson's request for panel rehearing and address his insufficiency claim on the merits.

We thus find ourselves in a position similar to that of the Eleventh Circuit in *United States v. Bobo*, 419 F.3d 1264 (11th Cir. 2005)—reciting in vain what we should have, could have, and would have done differently. There, the Eleventh Circuit initially reversed Bobo's convictions due to an error in the indictment, but stated in a footnote that it "seriously question[ed] whether the evidence presented was sufficient to support the convictions." *Id.* at 1266 (citation omitted). When Bobo sought to prevent a retrial on double jeopardy grounds, the Eleventh Circuit was forced to recognize that it had unjustifiably deviated from its "prudential rule" that challenges to the sufficiency of the evidence must be reached even when reversal is ordered on other grounds. *Id.* at 1268. The quoted footnote, the court concluded, did not constitute a holding that the evidence was insufficient, even though the court "should have" reached that issue. *Id.* We, too, should have reached Patterson's insufficiency-of-the-evidence claim in our original opinion, or at the very least when he brought the error to our attention in a petition for rehearing. Although, like the Eleventh Circuit in *Bobo*, we are forced to conclude that it is simply "too late to cure the defect at this time," *id.* at 1269, we trust that future panels of this court will avoid committing the same error.

**C.     The state did not violate the "letter and spirit" of this court's decision by introducing new evidence at Patterson's retrial or by scheduling a third trial outside of the 180-day period**

We turn now to Patterson's appeal of the only question addressed by the district court—whether the state of Ohio violated the conditions set forth by this court in *Patterson I*. Specifically, Patterson argues that the language of our prior opinion required the state to initiate any retrial on the same charges within 180 days of the issuance of the mandate, and that the our opinion did not contemplate that the state would introduce new evidence at the retrial. For the reasons explained below, we find no basis to read our prior opinion as imposing these unusual restrictions on the state.

*1.     Both the district court and this court have jurisdiction to assure compliance with the conditional writ*

In denying Patterson's motion, the district court assumed that it had subject matter jurisdiction over his case. But federal courts are not allowed simply to assume jurisdiction and then proceed to resolve a case on the merits. *See Steel Co v. Citizens for a Better Env't*, 523 U.S. 83, 93-101 (1998) (rejecting the doctrine of "hypothetical jurisdiction" and reaffirming that a federal court must assure itself of its jurisdiction before deciding a case). The jurisdictional question is controlled by this court's recent decision in *Gentry v. Deuth*, 456 F.3d 687 (6th Cir. 2006), which was decided after we heard oral argument. In *Gentry*, the district court granted the habeas petitioner a conditional writ of habeas corpus that permitted the state to correct the constitutional defect within 90 days of the final federal court order. *Id.* at 690-91. After the state chose not to retry the petitioner, she asked the district court to enforce the conditional writ by entering an order voiding her state conviction. The district court granted the requested relief. *Id.* at 691.

On appeal, the state argued that the district court had no jurisdiction to enter the requested order. This court disagreed, holding that district courts generally "retain jurisdiction to execute a lawful judgment when it becomes necessary." *Id.* at 692 (citing *Phifer v. Warden*, 53 F.3d 859, 862 (7th Cir. 1995)). The *Gentry* court explained that federal district courts "retain[] jurisdiction to determine whether a party has complied with the terms of a conditional order in a habeas case. A state's failure to timely cure the error identified by a federal district court in its conditional habeas order justifies the release of the petitioner." *Id.* (citation and quotation marks omitted). Applying

that rule to the facts before it, this court concluded that the district court had properly exercised jurisdiction over the petitioner's motion because the state's decision not to retry her did not cure the error identified by the district court. The petitioner's request for relief, this court observed, "reasonably asked the [district] court to enforce its order by making the conditional writ absolute." *Id.*

Similarly, in the present case, Patterson filed a motion that essentially asked the district court to "mak[e] the conditional writ" entered in *Patterson I* "absolute." *See id.* This court in *Gentry* recognized that district courts "retain[] jurisdiction to determine whether a party has complied with the terms of a conditional order in a habeas case," *id.*, and what the district court did in the present case was precisely that—it evaluated the state's compliance with the terms of the conditional writ that we had issued. We therefore conclude that district court's exercise of jurisdiction was proper under *Gentry*. *See also Mickens-Thomas v. Vaughn*, 355 F.3d 294, 303 (3d Cir. 2004) (relying on *Phifer* in asserting "continuing jurisdiction" to determine whether the state parole board had complied with the court's previous mandate in a habeas case). Because the district court had subject matter jurisdiction and granted a certificate of appealability, we have jurisdiction to review the merits of its decision. 28 U.S.C. § 2253(c)(1).

### 2.     *The state did not violate the letter or spirit of this court's decision by introducing new evidence or scheduling a third trial*

The district court did not hold an evidentiary hearing or make any findings of fact as to the state's actions since the grant of the conditional writ. We will therefore conduct a de novo review of the district court's legal conclusion that the state has complied with the terms of the writ. *See Mickens-Thomas*, 355 F.3d at 303 (reviewing the district court's legal decision de novo because that court had not held a hearing or made factual findings); *see also Northrop v. Trippett*, 265 F.3d 372, 377 (6th Cir. 2001) (holding that de novo review of both legal issues and factual findings is appropriate where "a district court decides a habeas petition without [an] evidentiary hearing").

The district court correctly determined that the state's actions have not run afoul of the "letter or spirit" of the conditional writ issued in *Patterson I*. Our opinion ended with the following conclusion:

> [W]e REVERSE the judgment of the district court, GRANT Patterson a conditional writ of habeas corpus that will result in his release from prison unless the state of Ohio commences a new trial against him within 180 days from the date of this opinion, and REMAND the case for further proceedings consistent with this opinion.

*Patterson I*, 316 F.3d at 611. The order instructed the state to "commence[] a new trial . . . within 180 days" of the opinion. *Id.* It did not, however, rule out the possibility that the trial itself, sentencing, further appeals, or any retrials might stretch well beyond the 180-day period (which was to be expected given the history of this case).

Likewise, nothing in our opinion in *Patterson I* suggests that the state was limited to presenting at Patterson's second trial exactly the same evidence that it introduced at the first trial. Our brief discussion of the sufficiency issue in *Patterson I* did no more than justify the decision to leave that issue undecided. That discussion did not evince an intention, as Patterson would have it, "to restore [Patterson] to essentially the same position he would have enjoyed had the first jury been properly instructed." Instead, we aimed to correct an erroneous jury instruction that had permitted Patterson to be convicted without proof of an essential element of the offense, thereby ensuring that the subsequent proceedings against him were not marred by the same constitutional error.

Moreover, Patterson has cited no authority for the proposition that the reversal of a conviction for improper jury instructions generally curtails the amount or type of evidence that the

state may produce during a retrial. This court's decision in *United States v. Davis*, 873 F.2d 900, 907 (6th Cir. 1989), which we discussed at length in Part II.A.1. above, contains language to the contrary. In explaining why reaching the defendant's insufficiency-of-the-evidence argument would have been futile, the *Davis* court emphasized that resolving that challenge would not have affected the viability of the government's different theory of liability under a new indictment. "The government," this court opined, "certainly would not be foreclosed, at a trial on the new indictment, from offering evidence that was not tendered at the first trial." *Id.* We read this language in *Davis* as reinforcing the commonsense notion that an appellate court's reversal of a conviction for trial error, unless specifically stated, does not oblige the government on remand to present a virtually identical version of the evidence and arguments that led to the initial reversal. In light of this court's statement in *Davis*, and because the type of limitation sought by Patterson is not ordinarily imposed, we conclude that our prior opinion did not intend to impose restrictions on the amount or type of evidence that the state could present during his retrial.

To sum up, a fair reading of the *Patterson I* opinion does not limit state-court proceedings beyond the initial 180-day commencement or prevent the state from introducing additional evidence during a retrial. We therefore affirm the district court's denial of Patterson's motion for an unconditional release and for a stay of the state-court proceedings.

### III. CONCLUSION

Federal courts are not often forced to issue what amounts to a *mea culpa*. An error that we committed three years ago, however, has forced us to do just that. Today's decision is all the more distressing because we have had to recognize not only that we made a mistake, but also that we cannot correct our error at this late date. This inability to correct a mistake of our own creation will likely strike some as inimical to our system of justice.

Integral to that system, however, are the decisions of the United States Supreme Court and our duty as an intermediate appellate court to follow those decisions even if they lead to uncomfortable results in particular cases. This is such a case. In light of the Supreme Court's recent holding that an appellate court's "willingness to correct a decision that it perceived to have been mistaken" does not suffice to justify a belated reconsideration of a previously decided issue in a habeas corpus case, *Bell v. Thompson*, 125 S. Ct. 2825, 2837 (2005), we are convinced that recalling the mandate under the present circumstances would be an abuse of our discretion. Because we cannot revisit our decision in *Patterson I*, and because the district court did not err in denying Patterson's motion for unconditional release and a stay of state-court proceedings, we **AFFIRM** the judgment below.

---

**CONCURRENCE**

---

ROSEN, District Judge, concurring in part and concurring in the judgment. I fully concur in the Court's determination that petitioner Eric Scott Patterson may properly be tried for a third time in state court, where he failed to secure a ruling by any court, state or federal, that the evidence at his first trial was insufficient to support his conviction of involuntary manslaughter based on child endangering, and where his second trial ended in a hung jury. *See Richardson v. United States,* 468 U.S. 317, 325-26, 104 S. Ct. 3081, 3086 (1984); *see also United States v. Davis,* 873 F.2d 900, 907 (6th Cir. 1989); *United States v. Bobo,* 419 F.3d 1264, 1267 (11th Cir. 2005); *United States v. Miller,* 952 F.2d 866, 872-74 (5th Cir. 1992). I write separately only to express my firm view that this panel did not violate any Sixth Circuit precedent or rule when it declined to reach Patterson's sufficiency challenge during the first round of habeas proceedings following his initial trial and conviction. *See Patterson v. Haskins,* 316 F.3d 596, 611 (6th Cir. 2003) ("*Patterson I*"). Rather, the panel acted entirely in accordance with this precedent by citing a good reason for its unwillingness to address Patterson's sufficiency challenge — namely, that to do so would require speculation as to how a properly instructed jury might have weighed the evidence, not only as to the offense of conviction, but also as to a lesser-included offense that the jury in Patterson's first trial had no occasion to reach. *See Patterson I,* 316 F.3d at 611. Because I am convinced that the *Patterson I* panel did not err in this regard, I cannot join in the majority's "*mea culpa*" on this issue.

As the majority acknowledges, there are only a handful of cases — and ***not a single habeas decision*** prior to *Patterson I* — in which a panel of this Court has expressed its view as to whether it would or should address a sufficiency-of-the-evidence challenge vis-à-vis some other claim of error. In the first such decision, *United States v. Orrico,* 599 F.2d 113, 116 (6th Cir. 1979), the panel stated that "[w]e decide the issue of sufficiency of the evidence, rather than admissibility, because the former issue is determinative of the question whether Orrico may be retried." In support of this chosen course of action, the panel cited the then-recent ruling in *Burks v. United States,* 437 U.S. 1, 18, 98 S. Ct. 2141, 2150-51 (1978), in which the Supreme Court held that a reversal for evidentiary insufficiency precludes a retrial on double jeopardy grounds. While this surely is a sound explanation for that panel's election to address the defendant's sufficiency challenge in lieu of his other claims of error, I do not read this single statement in *Orrico* as purporting to announce an inviolate "rule" that all subsequent panels were bound in all circumstances to follow.[1]

In the nearly twenty-five years between *Orrico* and *Patterson I,* this Court revisited this issue on only two occasions. First, in *United States v. Aarons,* 718 F.2d 188, 189 n.1 (6th Cir. 1983) — another pre-*Richardson* decision — the panel observed in a footnote that "[w]here the sufficiency of the evidence is properly before us, we consider that issue first because it is determinative of

---

[1]To the extent that the panel in *Orrico* construed *Burks* as prescriptive — *i.e.,* mandating that a court ***must*** address sufficiency challenges — rather than descriptive — *i.e.,* identifying the consequence of a successful sufficiency challenge — the Supreme Court's subsequent decision in *Richardson* surely belies such a reading of *Burks.* Specifically, the *Richardson* Court emphasized that "our decision in *Burks* did not extend beyond the procedural setting in which it arose," and that "[w]here, as here, there has been only a mistrial resulting from a hung jury, *Burks* simply does not require that an appellate court rule on the sufficiency of the evidence because retrial might be barred by the Double Jeopardy Clause." *Richardson,* 468 U.S. at 323, 104 S. Ct. at 3085; *see also Miller,* 952 F.2d at 871-72 (concluding that a prior Fifth Circuit decision was "no longer good law" in light of *Richardson,* and construing this latter ruling as "refus[ing] to extend *Burks* beyond instances in which the appellate court *in fact* reversed for insufficient evidence"); *United States v. Douglas,* 874 F.2d 1145, 1149-50 (7th Cir. 1989) (observing that the Supreme Court "has never held that a reviewing court must review the sufficiency of the evidence whenever a defendant raises the issue on appeal," and reasoning that *Richardson* precludes a "broad reading" of *Burks* as having adopted such a requirement). The panel in *Orrico,* of course, did not have the benefit of *Richardson's* discussion of *Burks.*

whether the appellant may be retried." In support of this proposition, the panel cited the ruling in *Orrico,* as well as a footnote in *Delk v. Atkinson,* 665 F.2d 90, 93 n.1 (6th Cir. 1981) — a footnote which, in turn, cited *Orrico* as the sole relevant Sixth Circuit decision on this point.**2** Similarly, in *United States v. Quinn,* 901 F.2d 522, 529 n.5 (6th Cir. 1990) (emphasis added), the panel opined (once again in a footnote) that "[t]he reversal on trial error here does not ***necessarily*** obviate the need to review the sufficiency of the evidence."**3** Again, *Quinn* cites *Orrico* and *Delk,* as well as the more recent *Aarons* decision, as the pertinent authorities on this subject.

Thus, the ***sole source*** of the majority's posited "requirement" to address sufficiency-of-the-evidence challenges is the single sentence in *Orrico* in which the panel explained why it had elected to address a sufficiency challenge instead of a question about the admissibility of certain evidence. Certainly, this falls far short of the extended discussion that our sister circuits have deemed appropriate before settling upon a general practice in appeals from federal convictions for handling sufficiency challenges accompanied by other claims of error. *See, e.g., Miller,* 952 F.2d at 871-74; *Douglas,* 874 F.2d at 1149-50. Moreover, while *Orrico* cites only to *Burks* on this point, the Supreme Court subsequently explained in *Richardson* that *Burks* does not "require" appellate courts to rule on sufficiency challenges. *See Richardson*, 468 U.S. at 323, 104 S. Ct. at 3085. Finally, and as noted in *Delk,* 665 F.2d at 93 n.1, *Orrico* was an appeal from a federal conviction — as, indeed, were *Miller, Douglas,* and ***all*** of the other out-of-circuit cases identified by the majority (or in my own research) as endorsing a practice of reaching sufficiency challenges. The present habeas proceeding raises additional concerns of federalism and comity that the majority fails to acknowledge, and these considerations militate strongly against a reflexive, one-size-fits-all adoption here of any possible "rule" that could be gleaned from *Orrico.*

Nevertheless, it is not even necessary in this case to engage in a debate about the prescriptive force of *Orrico,* because this Court already has recognized that any "practice" that might have emerged from that decision has its exceptions. As the majority acknowledges, (*see* Majority Op. at 6), one such exception was recognized in *Davis, supra,* 873 F.2d at 901, 907, where the panel that heard defendant Davis's initial appeal reversed his conviction on the ground of a deficient indictment without reaching his challenge to the sufficiency of the evidence at his first trial. After Davis was charged in a superseding indictment, he argued that any retrial was barred by the initial panel's failure to address his sufficiency challenge.

In rejecting this contention, the panel in *Davis* found that the prior panel in that case had a sound basis for electing a course of action different from the one chosen in *Orrico.* In particular, the Court observed that *Orrico* did not present "a situation where the defendant had been tried on an indictment incorporating a legal theory that had turned out to be invalid." *Davis,* 873 F.2d at 907.

---

**2**Because the majority has cited *Delk* in support of its posited "*Burks* rule," (Majority Op. at 5), a brief discussion of that decision is warranted. The footnote from which the majority culls a "require[ment]" to address sufficiency challenges is, in fact, a ***survey*** of then-recent decisions from this and other circuits on "issues related to," but distinct from, the "precise question" before the panel in that case. *Delk,* 665 F.2d at 93 n.1. Curiously, the majority has not reproduced the entirety of the passage it quotes from this footnote, which reads in full: "Several courts including this one have indicated that where it is claimed on appeal *from a federal conviction* that the evidence was insufficient, the reviewing court is required to decide the sufficiency question even though there might be other grounds for reversal which would not preclude retrial." 665 F.2d at 93 n.1 (emphasis added). Once again, *Orrico* is the sole Sixth Circuit decision cited in support of this proposition. Plainly, then, *Delk* adds nothing to the question before us here — its footnoted discussion of "related" cases was explicitly acknowledged to be pure dicta, and this survey, in any event, merely leads us right back to the decision in *Orrico.*

**3**In light of this quoted language from *Quinn,* I fail to see how the majority here can read that case as reflecting the panel's "recogni[tion] . . . that it still ***needed*** to address Quinn's insufficiency-of-the-evidence claim." (Majority Op. at 5 (emphasis added).) Rather, it seems to me that the panel in *Quinn* was merely observing that a sufficiency review was not necessarily ***moot*** in light of "[t]he reversal on trial error," given that a successful sufficiency challenge would preclude a retrial. *Quinn,* 901 F.2d at 529 n.5.

Under these circumstances, the Court reasoned that "it would have been pointless for [the initial panel] to sift through several days' worth of trial evidence to determine whether it would have been sufficient to support a conviction under" a since-invalidated legal theory. 873 F.2d at 907. Similarly, the Court found that it would have run counter to "considerations of judicial economy" for the prior panel to decide whether the evidence introduced at Davis's initial trial would have been sufficient to sustain a conviction under a valid legal theory, where Davis had yet to be indicted under such a theory and there was no assurance that the government would seek to do so. 873 F.2d at 907.

This, then, was the legal landscape as it existed in this Circuit when we heard and decided *Patterson I.* On one hand, the *Orrico* panel had *elected* in 1979 to address a sufficiency rather than an evidentiary challenge, and two subsequent panels had relied on *Orrico* in pursuing similar courses of action. On the other hand, the panel in *Davis* had deemed it appropriate to chart a different course in that case, despite its acknowledgment of the procedure followed in *Orrico.* When presented with Patterson's sufficiency challenge, therefore, we had both of these alternatives available to us — we *could have* reviewed the sufficiency of the evidence, notwithstanding our determination that the jury instructions at Patterson's initial trial were erroneous, or we could have found, as in *Davis,* that there were reasons to refrain from such a review.

We explicitly chose the latter course, citing reasons why, in our judgment, it "would be imprudent" to address Patterson's sufficiency challenge. *Patterson I,* 316 F.3d at 611. First, in light of an omission in the jury instructions regarding the offense of which Patterson was convicted, we found it problematic to "comment[] on whether sufficient evidence was presented for the jury to have found guilt beyond a reasonable doubt based on the essential elements of a crime for which the jury was never completely charged." 316 F.3d at 611. Next, and more importantly, we observed that, in order to grant the unconditional writ sought by Patterson, we necessarily would have been required to gauge the sufficiency of the evidence *both* as to the offense of conviction *and* as to a lesser included offense about which the jury also had been instructed. We were particularly reluctant to undertake this latter inquiry because the jury at Patterson's trial had not done so, having "ceased deliberating" as instructed upon finding Patterson guilty of involuntary manslaughter based on child endangering. 316 F.3d at 611.

Whether or not the majority might choose a different course of action today, there is no basis for its conclusion that we "erred" or deviated from some longstanding Circuit practice when we deliberately elected not to address Patterson's sufficiency challenge. In an effort to identify such an error, the majority first reasons that *Davis* is "readily distinguishable," (Majority Op. at 7), in that the reasons given for declining to reach a sufficiency challenge in that case were not the same as the reasons we identified in *Patterson I.* Yet, beyond the fact (discussed below) that the panel in *Davis* did not characterize itself as "carving out a narrow exception of limited application" to a purported Circuit "rule" governing sufficiency challenges, (Majority Op. at 7), there is certainly no indication that the panel meant for this "exception" to be exclusive, or to occupy the field of possible circumstances under which a court could decline to reach a sufficiency challenge. Rather, the panel merely decided the case before it, deeming it inappropriate under those particular circumstances to consider the sufficiency of the evidence at the defendant's initial trial.

This, of course, is precisely what we did in *Patterson I.* Even if one were to assume — which I do not — that our reasons were somehow not as "good" as those identified in *Davis,* no error can be gleaned from the mere fact that our reasons were *different* from those cited in an earlier case, and certainly no *"mea culpa"* is warranted. If no prior panel had opined that the sorts of reasons we gave in *Patterson I* were "good enough" to warrant an "exception" to this Circuit's "rule," neither had any prior panel opined that such reasons were *not* "good enough," and that only the circumstances presented in *Davis* could justify such an exception. Indeed, as noted earlier, there is *no case* predating *Patterson I* in which this Court invoked any sort of "rule" or "practice" requiring that sufficiency challenges be addressed in habeas proceedings, much less opined as to the

existence or extent of any possible "exceptions."  Writing on this blank slate, we were not constrained in *Patterson I* to read *Davis* as establishing the sole set of circumstances under which we could decline to reach a sufficiency challenge.

Nonetheless, the majority insists that it would be "disingenuous" to construe *Patterson I* as a "conscious and purposeful departure from a longstanding practice." (Majority Op. at 8.)  Yet, if *Davis* is to be held up as the gold standard for such "conscious and purposeful" deliberation, I cannot see how our decision in *Patterson I* would fail to measure up.  Just as in *Patterson I,* there is nothing in *Davis* that reflects the panel's recognition that it was bound to adhere to some longstanding Circuit practice unless it could identify a basis for an exception.[4]  Rather, the panel in *Davis,* like its counterpart in *Patterson I*, merely explained the reasons for its judgment that a sufficiency review would be inappropriate in that case.  If the panels in *Davis* and *Patterson I* alike failed to perceive the need for more extensive discussion or justification of their respective decisions to forgo a sufficiency review, I can only surmise that this was attributable to the panels' common understanding that they were not bound by any "longstanding Circuit practice" to proceed otherwise.

To be sure, *Davis* cited *Orrico* and *Delk,* and then explained why those cases were distinguishable.  Yet, I do not believe that a panel can be accused of failing to reach a "conscious and purposeful" decision merely by virtue of the fact that it does not cite and distinguish any and all cases that arguably bear upon the issue before it.  Whether "purposeful[ly]" or otherwise, the fact remains that we considered in *Patterson I* whether to address a sufficiency challenge and decided that "it would be imprudent" to do so.  316 F.3d at 611.  As explained, I believe that this course of action was readily available to us under the existing Sixth Circuit precedent, which was silent as to habeas proceedings and quite limited even as to appeals from federal convictions.

In any event, any suggestion that we were oblivious to a "practice" adopted in *Orrico* or some other Sixth Circuit decision is belied by our denial of Patterson's petition for rehearing, in which he ***expressly argued*** that we were required under *Quinn, Delk,* and *Orrico* to address his sufficiency challenge.  The majority unfortunately fails to mention this filing in its discussion of the unstated reasoning and "desire[s]" that purportedly shaped our decision in *Patterson I*.  (*See* Majority Op. at 8.)  Unless the majority is prepared to say that we rejected this petition out-of-hand without reading or considering it — and my recollection is definitively to the contrary — it is readily apparent to me that we "conscious[ly] and purposeful[ly]" elected not to address Patterson's sufficiency challenge, despite his argument that we were compelled to do so.  Having concluded that we did not err in this regard, I need not join in the majority's speculation as to "[w]hat we attempted to do," (*id.*), nor its "*mea culpa*" for having unanimously decided the case as we did, both initially and upon Patterson's request for rehearing.

Finally, I feel compelled to address the apologia with which the majority closes its opinion.  Even assuming, for the moment, that I agreed with the majority's conclusion that we erred in *Patterson I,* I fail to perceive the need in this case to reassure the citizenry that our system of justice functions properly on the whole, much less to attribute the purportedly "uncomfortable result[]" here to our obligation to follow Supreme Court precedent.  (*See id.* at 19.)  As to the former, it is important to distinguish between our decision not to address Patterson's sufficiency challenge and the possible ***outcome*** of any such sufficiency review that we might have undertaken.  Unless Patterson's challenge would have been successful, our purported error in declining to address it could not possibly be viewed as "inimical to our system of justice," (*id.*) — to the contrary, such an error would be utterly harmless.  Yet, throughout his state court appeals and the ensuing federal

---

[4]Notably, when *Davis* was decided, it could at least be maintained that two prior panels, in *Orrico* and *Aarons,* had adopted a "practice" of addressing sufficiency challenges in appeals from federal convictions.  When we decided *Patterson I,* in contrast, there were no analogous rulings in habeas cases that could have alerted us to some Circuit "practice" that we might be obliged to follow.

habeas proceedings, Patterson has never once secured the opinion of **any judge** — state or federal — that the evidence at his first trial was insufficient to sustain his conviction.[5]

But, even if Patterson's sufficiency challenge might have succeeded, it is misleading to suggest that a court's inability or unwillingness to address such a challenge is "inimical" to a properly functioning system of justice. Simply stated, there are all sorts of circumstances under which even a meritorious challenge might not be heard, particularly in a habeas proceeding. To cite a fairly stark example, the Supreme Court has invoked considerations of exhaustion and procedural default to deny federal habeas review to a death row inmate who filed his state court appeal a mere **three days** after the relevant deadline. *See Coleman v. Thompson,* 501 U.S. 722, 111 S. Ct. 2546 (1991). And, of course, this Court routinely denies certificates of appealability on all sorts of issues — including sufficiency challenges — that habeas petitioners wish to pursue, based on a panel's gatekeeping determination that the petitioner has failed to "ma[k]e a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). At worst, then, the present case merely confirms that judicial error is among the possible reasons why a seemingly meritorious argument might not succeed. This will hardly come as a surprise to petitioners in habeas proceedings — and I suspect that even the general public harbors no illusions about the infallibility of judges.[6]

This brings me to my second concern with the majority's concluding remarks — namely, that they could be read as laying the blame for today's supposedly "uncomfortable result[]" at the feet of the Supreme Court. Any error — if error there was — was ours alone, of course, and we had ample notice and opportunity to timely correct any such error upon Patterson's filing of a petition for rehearing. Even in the absence of the Supreme Court precedent cited by the majority, I would be reluctant to subscribe to a rule that would allow judges to revisit their decisions years later, based upon a delayed realization that they might have been mistaken. It goes without saying, of course, that correct rulings are vitally important to the proper functioning of a judicial system, and that judges are acutely aware of this. As a result, judges strive mightily to avoid the consequences of an erroneous judgment, and this was no less true of our panel in *Patterson I.* Yet, finality **also** plays a crucial role in our judicial system, as this Court's decisions have long recognized. *See, e.g., Pierce v. United Mine Workers Welfare & Retirement Fund,* 770 F.2d 449, 451-52 (6th Cir. 1985); *Barrier v. Beaver,* 712 F.2d 231, 234-35 (6th Cir. 1983); *Hines v. Royal Indemnity Co.,* 253 F.2d 111, 113-14 (6th Cir. 1958). And the latter, in my judgment, assumes still greater importance in habeas cases where, as here, a defendant has been given a full and fair opportunity to present all of his arguments through a complete course of state and federal proceedings.

Finally, it bears emphasis — and the majority also recognizes this, (*see* Majority Op. at 8-10) — that any purported error in *Patterson I* did not subject Patterson to an unconstitutional retrial. Nor has our decision otherwise diminished any of the constitutional protections that Patterson enjoys as he faces his third state court trial. Rather, he fully retains his due process guarantee of a verdict based upon sufficient evidence, *see Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979), as well as his opportunity to challenge any eventual conviction through a full round of state court appeals and, if necessary, federal habeas proceedings. I am content that Patterson's fate rests first and foremost upon the judgment of a jury of his peers, and see nothing "uncomfortable" or "inimical to our system of justice" in this outcome. Accordingly, while I disagree with the majority's conclusion that we erred in *Patterson I,* I concur in its judgment that Patterson's state court trial should be allowed to go forward.

---

[5]To the contrary, I am firmly convinced that the evidence was sufficient.

[6]One check against this, of course, is to pursue an appeal. Here, however, Patterson failed to petition the Supreme Court for a writ of certiorari following our decision in *Patterson I.* Nor did he seek *en banc* reconsideration of the panel's ruling.