*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0265p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CARRIE GENTRY,

        *Petitioner-Appellee,*

    *v.*

DORIS DEUTH, Warden, Kentucky Correctional
Institute for Women,

        *Respondent-Appellant.*

No. 05-6273

>

---

Appeal from the United States District Court
for the Western District of Kentucky at Paducah.
No. 03-00015—Edward H. Johnstone, District Judge.

Argued: May 31, 2006

Decided and Filed: July 31, 2006

Before: BOGGS, Chief Judge; and GIBBONS and GRIFFIN, Circuit Judges.

---

**COUNSEL**

**ARGUED:** William Robert Long, Jr., OFFICE OF THE ATTORNEY GENERAL, Frankfort, Kentucky, for Appellant. Timothy G. Arnold, DEPARTMENT OF PUBLIC ADVOCACY, Frankfort, Kentucky, for Appellee. **ON BRIEF:** William Robert Long, Jr., OFFICE OF THE ATTORNEY GENERAL, Frankfort, Kentucky, for Appellant. Timothy G. Arnold, DEPARTMENT OF PUBLIC ADVOCACY, Frankfort, Kentucky, for Appellee.

---

**OPINION**

---

     BOGGS, Chief Judge. This is a case in which the district court granted a conditional writ of habeas corpus after the petitioner had already been released from incarceration, but no party challenges that order. Instead, the respondent-appellant Commonwealth of Kentucky challenges the district court's subsequent order rendering the conditional writ absolute in response to the appellee's motion to enforce, on the grounds that the commonwealth had failed to comply with the district court's conditions. By the express terms of this order, the district court nullified the petitioner-appellee's criminal conviction so that she would not suffer any collateral consequences as a result of her felony conviction. For the reasons stated below, we affirm.

**I**

The facts of this case are not in dispute. On January 28, 1999, Carrie Gentry met Brian Pettit at Ginger and Pickles, a bar in McCracken County, Kentucky. Both were drinking, though Gentry claims that she was much more sober than her new friend. Gentry agreed to drive Pettit, in his 1991 Ford Mustang, to her apartment. Upon arriving at her home, however, Pettit wished to continue listening to some new music that he had recently purchased, so Gentry agreed to keep driving so as not to wake her daughter who was asleep in the apartment. While driving, Gentry failed to negotiate a curve. The car crossed the center line, hit a bridge abutment, and flipped in the air. Both Pettit and Gentry were ejected from the vehicle. Pettit died at the scene.

Gentry was indicted by a grand jury for driving under the influence and manslaughter in the second degree. During trial, the Commonwealth introduced, over Gentry's objections, the testimony of five expert witnesses – state employees testifying as to Gentry's blood alcohol level and as to physical evidence in the car that pointed to her as having been the driver – via two-way closed-circuit television. Gentry was convicted and sentenced to five years in prison. Gentry's appeals were denied at all levels, including the United States Supreme Court. *Gentry v. Kentucky*, 537 U.S. 981 (2002) (denying *cert.*).

Gentry filed the instant habeas petition on January 23, 2003. While her petition remained pending, she was released from prison in July 2003. The district court denied her habeas petition on March 18, 2004, holding that although the Commonwealth had violated Gentry's Sixth Amendment Confrontation Clause rights by employing the two-way closed-circuit system without good cause, the error had been harmless. Gentry then filed a motion to alter or amend judgment, and the district court subsequently changed its mind, holding that its prior harmless error analysis had been inadequate. The court conditionally granted a writ of habeas corpus "if the Commonwealth does not retry Gentry within ninety days of the entry of this judgment should appeal not be taken, or within ninety days of any final opinion on appeal that affirms this revisited decision should an appeal be taken by the respondent." The order was entered on the docket on May 21, 2004. Kentucky filed an appeal, but then dropped it voluntarily on July 14, 2004.

On January 27, 2005, Gentry filed a motion asking the district court to enforce its May 2004 judgment by voiding the Commonwealth's conviction so that she would not face any collateral consequences as a result of having been convicted of a felony. The district court granted this motion on July 21, 2005, converting the conditional grant of habeas into an absolute grant, and nullifying the conviction. The Commonwealth thereafter filed a timely appeal from that order.

**II**

We review a district court's disposition of a habeas petition *de novo,* and its findings of fact for clear error. *Rickman v. Bell*, 131 F.3d 1150, 1153 (6th Cir. 1997). Questions of law or mixed questions of law and fact are reviewed *de novo*. *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). As this appeal is essentially predicated on a technical legal issue – whether the district court possessed jurisdiction over the motion to enforce and the authority to nullify the Commonwealth's conviction – we must apply *de novo* review.

**A**

The Commonwealth first argues that Gentry's January 2005 motion to enforce should be construed as a motion to alter or amend judgment pursuant to Rule 59 of the Federal Rules of Civil Procedure and that such a motion would have been untimely as it was filed eight months after entry of judgment. The state predicates this argument on its assertion that Gentry was asking for relief that she had not been previously granted – relief from collateral consequences of her felony conviction – and that such relief was extrinsic to the conditional writ. As such relief was ostensibly

not granted by the district court's May 2004 order, the state thus suggests that Gentry was essentially asking the court to alter or amend its judgment pursuant to Civil Rule 59.

The Commonwealth is wrong. In her January 2005 motion, Gentry clearly asked the district court to *enforce* its May 2004 judgment, and she did not challenge or seek to amend that order. The district court issued its May 2004 order "conditionally granting [the writ] if the Commonwealth does not retry Gentry within ninety days of the entry of this judgment should not appeal be taken, or within ninety days of any final opinion on appeal that affirms this revisited decision should an appeal be taken by the respondent." The Commonwealth unquestionably failed to grant Gentry a new trial, and therefore it failed to abide by the condition that the district court had established. As there was no need to release Gentry from incarceration, the only action required was to expunge Gentry's record of her unconstitutional felony conviction. The Commonwealth took no such action. Gentry therefore filed her January 2005 motion asking for the essential relief contemplated by the conditional order, for the court's May 2004 order implicitly expected that the Commonwealth would vacate the prior judgment pursuant to seeking a new trial, and thus the Commonwealth's failure to seek a new trial effectively circumvented the district court's purpose. The motion was thus not filed pursuant to Civil Rule 59, and it was not untimely.

**B**

The Commonwealth next argues that the district court did not retain jurisdiction to hear this matter. Again, the Commonwealth is incorrect. In the first place, the sole distinction between a conditional and an absolute grant of the writ of habeas corpus is that the former lies latent unless and until the state fails to perform the established condition, at which time the writ springs to life. *See Smith v. Lucas*, 9 F.3d 359, 366-67 (5th Cir. 1993); *McQuillion v. Duncan*, 253 F. Supp.2d 1131, 1134 (C.D. Cal. 2003). District courts rightly favor conditional grants, which provide states with an opportunity to cure their constitutional errors, out of a proper concern for comity among the co-equal sovereigns. "[C]ourts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). Absolute grants are therefore generally limited to situations where the nature of the error is simply incurable, such as a conviction under an unconstitutional statute. *See, e.g., Staley v. Jones*, 108 F. Supp. 2d 777, 788 (W.D. Mich. 2000), *rev'd on other grounds*, 239 F.3d 769 (6th Cir. 2001). Conditional grants of writs of habeas corpus are final orders, *Phifer v. Warden, United States Pen., Terre Haute, Ind.*, 53 F.3d 859, 862 (7th Cir. 1995), exactly like absolute grants, and they ordinarily and ideally operate automatically, that is, without the need for the district court to act further.

Nevertheless, district courts retain jurisdiction to execute a lawful judgment when it becomes necessary. "If the state complies with its order, the petitioner will not be released; if the state fails to comply with its order, release will occur. Ordinarily, the only task that remains for the district court is the execution of judgment." *Ibid.* "A federal district court retains jurisdiction to determine whether a party has complied with the terms of a conditional order in a habeas case. A state's failure to timely cure the error identified by a federal district court in its conditional habeas order justifies the release of the petitioner." *Satterlee v. Wolfenbarger*, No. 03-71682-DT, 2005 U.S. Dist. LEXIS 25874, at *6 (E.D. Mich. Oct. 19, 2005) (internal citations omitted) (vacating petitioner's conviction), *aff'd in part*, __ F.3d __ (6th Cir. 2006). *See also Santos-Rosario v. Renico*, 05-CV-70456, 2006 U.S. Dist. LEXIS 14074, at *3-4 (E.D. Mich. March 30, 2006) (denying writ even though the state failed to comply with the precise terms of the district court's conditions because the state had substantially complied with the conditions). On the other hand, when a state meets the terms of the habeas court's condition, thereby avoiding the writ's actual issuance, the habeas court does not retain any further jurisdiction over the matter. *Pitchess v. Davis*, 421 U.S. 482, 490 (1975) (per curiam) (noting "[n]either Rule 60 (b), 28 U.S.C. § 2254, nor the two read

together, permit a federal habeas court to maintain a continuing supervision over a retrial conducted pursuant to a conditional writ granted by the habeas court.").

As Gentry had been released from prison prior to the district court's order, the Commonwealth obviously had no duty under the district court's order to take any action with respect to her person. However, Gentry's status as a convicted felon apparently remained in force, as the Commonwealth did not nullify her conviction, and thus her January 2005 motion reasonably asked the court to enforce its order by making the conditional writ absolute. Therefore, we find that the district court retained jurisdiction to enforce its conditional grant of a writ of habeas corpus.

## C

Next, the Commonwealth argues that Gentry's January 2005 motion was moot because the essential object of the conditional habeas writ – release of the *person* of the petitioner – had already been met, claiming

> the condition for granting the writ occurred and Gentry, who had already completed service of her sentence, was entitled to be released from custody. The district court's judgment did not void or otherwise vacate the state court's judgment of conviction nor did it place any other duty or condition on the Commonwealth.

Appellant's Br. at 15-16. Thus, the Commonwealth argues, "once the condition occurred and Gentry was released from custody there ceased to be a case in [sic] controversy." *Ibid.* This simply misstates the law respecting habeas relief, for it muddies the clear distinction between a habeas petition challenging a conviction, and one challenging the particularities of sentencing.

Article III, Section 2 of the United States Constitution authorizes the federal judiciary only to hear cases or controversies, and therefore federal courts may not exercise jurisdiction when the controversy has been mooted, that is to say, when the "issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). *See also Stewart v. Blackwell*, 444 F.3d 843, 855-56 (6th Cir. 2006). Although the Supreme Court had seemed to limit habeas relief to "the body of the petitioner" in *Fay v. Noia*, 372 U.S. 391, 430-31 (1963), a stance that was in line with the writ's historical function of releasing prisoners from incarceration, the Court subsequently expanded the writ's scope in *Carafas v. LaVallee*, 391 U.S. 234, 237 (1968), stating that the petitioner's challenge was not mooted by his release from incarceration prior to his hearing because, "in consequence of his conviction, he cannot engage in certain businesses; he cannot serve as an official of a labor union for a specified period of time; he cannot vote in any election held in New York State; he cannot serve as a juror." *Ibid.* Therefore, "[o]n account of these 'collateral consequences,' the case is not moot." *Id.* at 237-38. The Court reached a similar decision a few weeks later in *Sibron v. New York*, 392 U.S. 40 (1968), in which the petitioner had been released prior to argument in the state intermediate appellate court. Therefore the Supreme Court has found that the appropriate remedy for a writ of habeas corpus issued pursuant to an unlawful criminal conviction includes relief not only from the conviction's *direct* consequences (*e.g.* incarceration), but also from its *collateral* consequences. *Id.* at 55-58.

We have followed this precedent, as we must. In *Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004), we held, in part, that a petitioner's "release from custody and the subsequent conclusion of his parole term, after the filing of his habeas petition [challenging his conviction], do not render moot his appeal from the district court's denial of the petition" because "of the continuing collateral consequences to a wrongful criminal conviction." *Ibid.* (citing *Spencer v. Kemna*, 523 U.S. 1, 8 (1998)). Similarly, in *Brewer v. Dahlberg*, 942 F.2d 328, 335 (6th Cir. 1991), we held that a petitioner's challenge to his parole status, rather than a challenge to a parole revocation and

consequent incarceration for parole violation, meant that his case was not rendered moot simply because he was no longer imprisoned for his parole revocation. In *Green v. Arn*, 839 F.2d 300, 301-02 (6th Cir. 1988), we concluded that a habeas petition was not mooted by the petitioner's release from prison prior to the court's determination, for the petitioner could still face "significant collateral consequences flow[ing] from a criminal conviction." *See also Stotts v. Perini*, 427 F.2d 1296, 1297 (6th Cir. 1970) ("Petitioner's action is not mooted by his release from custody, because 'disabilities' may still result from the conviction which he is attacking.").

The Commonwealth mistakenly relies on a line of decisions that addresses habeas petitions attacking the *sentence* rather than the *conviction*. Post-release habeas petitions challenging the conditions of confinement are almost necessarily moot, for courts normally cannot offer any habeas redress in such circumstances. As the *Spencer* Court noted:

> Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole – some "collateral consequence" of the conviction – must exist if the suit is to be maintained. In recent decades, we have been willing to presume that a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur).

*Spencer v. Kemna*, 523 U.S. at 7-8 (citations omitted). The Court in *Lane v. Williams*, 455 U.S. 624 (1982), found moot the habeas petitions of defendants who had pled guilty to a felony pursuant to a plea agreement. The petitioners in that case challenged their incarceration for parole violation after they had served their sentences, and they alleged that they had been unaware that their plea bargains had included a term of parole. The district court granted them specific performance of their plea agreement by declaring void the mandatory parole terms. The Supreme Court then held that their petition was moot because they had been released during the petition's pendency, and because their petition attacked only their sentences. *Id.* at 630-31. *See also Parker v. Ellis*, 362 U.S. 574 (1960). In *Diaz v. Kinkela*, 253 F.3d 241, 243-44 (6th Cir. 2001), the petitioner, while serving a prison sentence for a matter unrelated to his later petition, was convicted by the parole board for felonious assault and possessing a dangerous weapon while in detention, and his term of incarceration was increased by 90 days under Ohio's "bad acts" statute. The petitioner challenged that "bad acts" conviction and his additional 90-day sentence, but, before the district court could hear his case, he was released from prison, and Ohio's Supreme Court found the "bad acts" statute to be unconstitutional. *Id.* at 243. The district court thereafter denied his petition, and we affirmed, because the challenged conviction had already been nullified, and the court found moot his sole surviving challenge to the additional 90 days of imprisonment because he had long since been released from prison. *Id.* at 243-44.

With respect to injury, an essential element of a live controversy, the law does not require a habeas petitioner to prove by a preponderance of the evidence that she may face collateral consequences of her unconstitutional felony conviction, for the disabilities consequent to a felony conviction are legion, and patently obvious in many cases. Indeed, as we have already noted, the Supreme Court has acknowledged that it has allowed federal courts to presume the existence of collateral consequences "in recent decades." *Spencer*, 523 U.S. at 8. Moreover, in the case before us, the petitioner has pointed to Kentucky statutes that, on their face and as a matter of law, strip her, as a felon, of certain rights and privileges, including, *inter alia*, the right to vote and certain driving privileges. *See* Ky. Const. § 145 (stripping felons of the right to vote); Ky. Const. § 150 (restricting felons from holding public office); Ky. Rev. Stat. Ann. § 29A.080(2)(e) (2006) (disallowing felons from serving on juries); Ky. Rev. Stat. Ann. § 527.040 (2006) (disallowing felons from possessing firearms); Ky. Rev. Stat. Ann. § 189A.070 (2006) (revoking driver's license pending alcohol treatment program); Ky. Rev. Stat. Ann. § 532.080 (2006) (making felons eligible for persistent felony offender charges). There are also well-known collateral consequences of a felony conviction

under federal law of which we take judicial notice. *See, e.g.,* 18 U.S.C. § 922(g) (disallowing felons from possessing firearms). Therefore, to the extent that she was required to make a minimal showing of possible collateral consequences of her unconstitutional criminal conviction, Gentry has done so.

The instant petitioner raised a live and viable challenge to her felony conviction. *Abela*, *Spencer*, and the entire line of decisions dating back to *Carafas*, thus control this case. As such, the law obligates us to hold that Gentry's challenge to her conviction and its attendant direct and collateral consequences is not mooted simply by the fact of her prior release.

**D**

Focusing on the fact that the petitioner in *Diaz* had proposed as a remedy that we reduce his post-release control by 90 days, which we dismissed because he had not exhausted it in the state courts, the Commonwealth claims that *Diaz* mandates that we require the instant petitioner to exhaust her potential challenges to the collateral consequences of her conviction before we can address them. Yet the Commonwealth has misunderstood our analysis in *Diaz*. In the first place, as noted above, the petitioner in *Diaz* ultimately presented no viable challenge because his "bad acts" *conviction* had already been nullified as unconstitutional by the state supreme court before the district court could review his petition, and because he had long since been released from all confinement, including that arising from his "bad acts" *sentence*. As the district court was left with no possible remedy, his petition was moot. We then dismissed the *Diaz* petitioner's proposed remedy of reducing his post-release control by 90 days because that remedy was extrinsic to his petition, for the petitioner's period of post-release control had been determined by his unchallenged felony conviction, not by his "bad acts" conviction or sentence. *Diaz v. Kinkela*, 253 F.3d 241. Therefore, the proposed remedy raised a legal question independent of the habeas petition, and so the petitioner in *Diaz* had failed to exhaust his challenge with respect to that issue as required, requiring us to dismiss his suit.

Turning to our case, we have already noted that a successful habeas challenge to an unconstitutional conviction necessitates relief not only from any present incarceration arising from that conviction, but also from any collateral consequences thereof. Therefore, Gentry's challenge to the collateral consequences of her conviction was implied by her original petition challenging her conviction as unconstitutional, and as she had successfully exhausted her claim before bringing her habeas petition in the first place, she also met all exhaustion requirements with respect to the collateral consequences of that challenged conviction.

Successful habeas petitioners are entitled to the appropriate benefit of the writ, and we cannot require them to exhaust their claims anew in order to receive that benefit. To mandate that a petitioner who has obtained a writ of habeas corpus with respect to her unconstitutional conviction independently challenge the attempted imposition of collateral consequences of her unconstitutional conviction in state judiciaries, either *in toto* or *seriatim*, would, at a minimum, entail a uselessly formal acknowledgment of the states' sovereignty, for states could not constitutionally enforce those collateral consequences. Indeed, the Commonwealth itself implicitly acknowledges this problem in that it failed to raise any merits defense of its potential imposition of criminal collateral consequences against Gentry. Even more perniciously, under the Commonwealth's proposal, a less ethical state might find itself able in practice to impose collateral consequences of unlawful convictions when successful habeas petitioners find the task of challenging the attempted imposition of those consequences too onerous or intimidating. But a government under the law simply could not long remain under the law by acting in such a manner. Therefore, we hold that the petitioner is not required to exhaust anew her challenge to the collateral consequences of her unconstitutional conviction.

**E**

Finally, the Commonwealth asserts that the district court did not possess lawful authority to nullify the petitioner's conviction. Relatedly, the state argues that federal courts cannot nullify state court decisions when "less drastic means of preventing enforcement of collateral consequences exists."

The Commonwealth is wrong in its assertion that federal courts, pursuant to the issuance of a writ of habeas corpus, lack the proper authority to nullify an unconstitutionally obtained state criminal conviction. To hold otherwise would be incongruent with the writ's historical purpose and with the will of Congress, which has seen fit to empower the federal courts to dispose of habeas matters "as law and justice require." 28 U.S.C. § 2243. Accordingly, we have held that federal courts have been given "broad discretion in fashioning [habeas corpus] relief." *Gall v. Parker*, 231 F.3d 265, 335 (6th Cir. 2000). While the courts have heretofore had little occasion to speak directly to the district court's authority to nullify an unlawful state conviction, *see, e.g., Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) ("in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a [42 U.S.C.] § 1983 plaintiff must prove that the conviction or sentence has been . . . . [*inter alia*] called into question by a federal court's issuance of a writ of habeas corpus"), nevertheless the law is absolutely clear that the writ releases the successful petitioner from the state's custody, and, as we have discussed above, such release includes relief from the conviction's collateral consequences when it was the conviction itself that was found to be unconstitutional. As a practical, logical, and necessary matter, relief from the collateral consequences of an unconstitutionally obtained state criminal conviction effectively requires expungement of the conviction from the petitioner's record, and expungement of the record implies nullification of the unconstitutional conviction. *See Satterlee v. Wolfenbarger,* __ F.3d __, slip op. at 7 ("It appears that we have never expressly addressed whether habeas courts have the power to order the expungement of the record of a conviction. We conclude that they do."); *Ward v. Wolfenbarger*, 340 F. Supp. 2d 773, 776 (E.D. Mich. 2004) ("A federal district court has the authority, in a habeas corpus proceeding, to order the expungement of a habeas petitioner's criminal records against all persons who maintain custody of such records." (citations and internal quotation marks omitted)). Put another way, a state acts *ultra vires* when it obtains a criminal conviction in violation of the United States Constitution, and *ultra vires* acts bear no legitimate force in a government under the law. A public act without legitimate force is indistinct under the law from an act that never was, or an act that has been voided. Therefore, we hold that the district court acted within its constitutional authority when it nullified the petitioner's unlawful criminal conviction.

In so holding, however, we note that the fact that the writ *nullifies* the criminal conviction does not necessarily *reverse* that conviction, for the writ does not itself generally preclude the Commonwealth from retrying the petitioner if it can otherwise do so lawfully. Nullification is thus akin to a non-prejudicial dismissal. *See Rimmer v. Fayetteville Police Dept.*, 567 F.2d 273, 277 (4th Cir. 1977) ("While the state court judgment is neither reversed nor vacated, the prisoner is released and the state court judgment authoritatively declared void. Thereafter, the state court judgment should have no preclusive effect."); *Smith v. Spina*, 477 F.2d 1140, 1147-48 (3d Cir. 1973) ("Although this court has ordered that a writ of habeas corpus issue, such action is not the equivalent of a reversal of a state conviction. Only the Supreme Court has power, on direct appeal, to reverse a state judgment of conviction."); *Rosa v. McCray*, 03 CIV 4643 (GEL), 2004 U.S. Dist. LEXIS 24772, at *16 (S.D.N.Y. Dec. 8, 2004) ("Short of an order barring retrial, however, which is only appropriate in 'extraordinary' circumstances, even an order requiring release of a petitioner does not prohibit the reprosecution of the petitioner. Absent such extraordinary circumstances, the federal courts usually permit rearrest and retrial after the time period specified in the conditional release order has elapsed and the prisoner has been released.") (citations and internal quotation marks omitted) (granting writ), *rev'd on other grounds,* 396 F.3d 210 (2d Cir. 2005).

Moreover, the Commonwealth is wrong in its suggestion that the district court should have pursued an option "less drastic" than nullifying the conviction in order to provide the petitioner with an appropriate and effective remedy. Having correctly issued the writ, the choice of habeas remedy lies within the district court's sound discretion, *see Hilton*, 481 U.S. at 775 (noting that "a court has broad discretion in conditioning a judgment granting habeas relief"), though, of course, "a federal district court . . . should give careful consideration to the appropriate demands of comity in effectuating its habeas corpus decree." *Parisi v. Davidson*, 405 U.S. 34, 46 (1972). As it took action only after the Commonwealth had decided, by its inaction, not to provide the petitioner with appropriate relief, and as its ultimate choice of remedy lay squarely within its constitutional authority, the district court did not abuse its discretion by nullifying the Commonwealth's unconstitutional conviction.

### III

For the reasons stated above, we **AFFIRM**.