NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0992n.06

No. 10-5137

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| JOSEPH P. DYER, | ) | |
| | ) | **FILED** |
| Petitioner-Appellant, | ) | *Sep 07, 2012* |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JAMES MORROW, Warden, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| Respondent-Appellee. | ) | |

Before:        BOGGS and GIBBONS, Circuit Judges; and RUSSELL, District Judge.[*]

BOGGS, Circuit Judge.  Over the last decade, Dyer, a Tennessee prisoner, has challenged the state's denial of parole for his 1975 murder conviction, arguing that it violated the Ex Post Facto Clause of the Constitution.  The district court, perhaps breathing a sigh of relief in granting respondent's motion for summary judgment, declared that "[t]his case has a long and tortured past. The time has now come to put it to rest." Unfortunately, rather than putting this case to rest, this court must now resurrect it, in order to give the Tennessee state courts an opportunity to determine in the first instance whether Dyer's 2009 parole hearing was conducted in accordance with the parole standards in effect at the time of his conviction in 1975—instead of the present-day standards—and thus complied with the Ex Post Facto Clause of the Constitution.

---

[*]The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

**I**

The procedural posture of this case is indeed long and tortured. In 1975, Dyer was convicted

of two counts of first-degree murder and two counts of grand larceny and was sentenced to death.

Tennessee's death-penalty statute was declared unconstitutional while Dyer's appeal was pending,

and his sentence was commuted to life imprisonment. In 1993, the parole board denied Dyer's

request for parole due to the seriousness of his offense. In 1998, Dyer was again denied parole on

the same basis. At both hearings, the parole boards relied on Tenn. Code Ann. §§ 40-35-503(b)[1] and

40-28-117(a),[2] both enacted after Dyer's conviction. The standard for granting parole under these

statutes differed from Tenn. Code Ann. § 40-3614,[3] which was in effect at the time of Dyer's

---

[1] Tenn. Code Ann. § 40-35-503(b) (1998) states: "Release on parole is a privilege and not a right, and no inmate convicted shall be granted parole if the board finds that: (1) There is a substantial risk that the defendant will not conform to the conditions of the release program; (2) The release from custody at the time would depreciate the seriousness of the crime of which the defendant stands convicted or promote disrespect for the law; (3) The release from custody at the time would have a substantially adverse effect on institutional discipline; or (4) The defendant's continued correctional treatment, medical care or vocational or other training in the institution will substantially enhance the defendant's capacity to lead a law-abiding life when given release status at a later time."

[2] Tenn. Code Ann. § 40-28-117(a) (1998) states: "Parole being a privilege and not a right, no prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board is of the opinion that there is reasonable probability that such prisoner, if released, will live and remain at liberty without violating the law, and that the prisoner's release is not incompatible with the welfare of society. If the board so determines, such prisoner may be paroled . . . ."

[3] Tenn. Code Ann. § 40-3614 (1974) states: "Parole being a privilege and not a right, no prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board is of the opinion that there is reasonable probability that if such prisoner is released he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society. If the board shall so determine, such

conviction in 1975. For simplicity's sake, we refer to the statute in effect in 1975 as the "earlier standard" and the statutes in effect in 1998 as the "later standard."

There are two primary differences between the earlier standard and the later standard. First, the later standard added an additional ground on which parole could be denied: "The release from custody at the time would depreciate the seriousness of the crime of which the defendant stands convicted or promote disrespect for the law." Tenn. Code Ann. § 40-35-503(b) (1998). The earlier standard did not include consideration of whether parole would depreciate of the seriousness of the crime.

Second, the earlier standard was mandatory and required that a prisoner "*shall* be allowed to go upon parole" if the parole board determined that a reasonable probability existed that he could "live and remain at liberty without violating the law" and that his release "is not incompatible with the welfare of society." Tenn. Code Ann. § 40-3614. The later standard changed the mandatory "shall" to a permissive "may," stating that a prisoner who could "live and remain at liberty without violating the law, and [whose] release is not incompatible with the welfare of society . . . *may* be paroled." Tenn. Code Ann. § 40-28-117(a) (1998) (emphasis added).

After the denial of parole in 1998 based on the later standard, Dyer appealed. First, on January 11, 1999, he filed a petition for certiorari in the Davidson County Chancery Court. Dyer asserted that "in considering Petitioner for parole, members of the Tennessee Board of Probation and Parole violated the Ex Post Facto clause of State and Federal Constitutions and also violated due

prisoner *shall* be allowed to go upon parole . . . ." (emphasis added).

process when they retrospectively [*sic*] applied new, more restrictive laws in considering petitioner for parole, rather than the more lenient laws in effect at the time of his crimes; and the use of a 1982 law to bar his parole release." *Ibid.* No evidentiary hearing was held. The court granted judgment for respondents on September 20, 1999. Dyer appealed that judgment to the Tennessee Court of Appeals, and the judgment was affirmed. In 2001, the Tennessee Supreme Court denied permission to appeal.

On October 9, 2001, Dyer filed a federal habeas petition challenging the "retrospective application of TCA 40-35-503 . . . at his 1998 parole hearing," arguing that the "application of this statute at petitioner's parole hearing violated the ex post facto prohibitions of both the United States and Tennessee Constitution." The district court dismissed the petition.

On appeal, this court disagreed and reviewed the state court's opinion *de novo* to determine "whether Dyer has proven that a sufficient risk of increased punishment is inherent in the wording of the statutes themselves or, alternatively, that it results from their practical implementation." *Dyer v. Bowlen*, 465 F.3d 280 (6th Cir. 2006). This court was unable to answer that question with the record before it, so it remanded "the case to the district court with instructions to conduct an evidentiary hearing on the practical effects of the statutes' retroactive application." *Id.* at 288. Specifically, we stated: "Given Dyer's lack of opportunity to present relevant evidence, we are of the opinion that the proper remedy is to remand the case to the district court for an evidentiary hearing." *Id.* at 290. The import of the remand was to give Dyer "the opportunity to acquire data evidencing the practical implementation of the parole provisions in question." *Id.* at 292. We left "it to the district court to work out the details of how best to comply with our instructions." *Ibid.*

On remand, appointed counsel, along with the State of Tennessee, "devoted considerable time and effort to obtaining all available Tennessee parole records." The district court found that "it became manifestly evident that the State simply did not have records from which Dyer can demonstrate what effect, if any, the new standard has had on the granting or denying of parole." On March 27, 2008, the state held another parole hearing, purporting to comply with the later standards. On November 7, 2008, the state filed a motion to dismiss, arguing that Dyer's petition was moot, as the March 7, 2008, parole hearing was "conducted under the standards in place at the time of his conviction," and that he thus had received "the relief he requested—a parole hearing under the standard in place at the time of his conviction." Dyer countered that the hearing was a "'sham hearing' designed to" moot and dismiss the case. Appellant Br. at 22. However, the district court was unable to determine from the record "whether the old parole standard was used at [the March 7, 2008,] hearing."

Trapped between the Scylla of this court's mandate and the Charybdis of the inadequate record, the district court sought to ensure that Dyer received a parole hearing that comported with the Constitution. On March 31, 2009, the district court, exasperated in its efforts to comply with this court's mandate, effectively threw its hands in the air:

> After herculean efforts by Dyer's appointed counsel, as well as much time and effort expended by the State of Tennessee, it is now manifestly evident that Mr. Dyer will not be able to make the showing that is the purpose of the remand. The State simply does not have records from which Dyer could demonstrate what effect, if any, the new standard has had on the granting or denial of parole. Thus, as a practical matter, it is impossible for this Court to comply with the instructions of the Court of Appeals to conduct an evidentiary hearing that could reach any meaningful conclusion.

> Where do we go from here? It seems that the only means available to insure that Dyer has not been treated less favorably under the new parole standard is to direct that the State parole board conduct another parole hearing for Dyer using the standard that was in effect at the time of Dyer's crimes. This hearing must be transcribed by a court reporter; and an attorney from the State Attorney General's Office must be present to insure that the old standard is utilized. This remedy was suggested in the dissent to the Court of Appeals opinion. (See 465 F.3d at 295.)[4]

On April 1, 2009, after ordering Tennessee to hold another parole hearing , the district court denied the motion to dismiss in a one-paragraph order that referred to the court's memorandum but made no mention of any potential mootness issues.  On June 25, 2009, the parole board held a new hearing.  The parole board denied Dyer's request. The chairman closed by saying he would see Dyer again in 2011.  The chairman noted that Dyer has "a limited right to file an appeal."[5]  On October 19, 2009, Tennessee filed a motion for summary judgment, arguing that "the Board [gave] Dyer a supplemental hearing using the standards in place at the time of Dyer's conviction."

On January 13, 2010, the district court granted Tennessee's motion for summary judgment and denied Dyer's petition for a writ of habeas corpus.  The court noted that the "only means available to insure that Dyer has not been treated less favorably under the new parole standard was to direct the Board to conduct another parole hearing for Dyer using the standard that was in effect

---

[4] In a subsequent memorandum, the district court similarly noted that "it became manifestly evident that the State simply does not have records from which Dyer can demonstrate what effect, if any, the new standard has had on the granting or denying of parole. Thus, as a practical matter, it is not possible for this Court to conduct a meaningful evidentiary hearing in accordance with the instructions from the Court of Appeals."

[5]The record does not indicate if Dyer ever appealed the 2009 parole hearing through the state courts, as he had done initially in 1999 following the earlier parole hearing. Whether any relevant state statutes of limitations were tolled during the pendency of these federal proceedings is discussed in Part V.

at the time of Dyer's conviction." The district court found that the only question at issue was "whether the June 25, 2009, parole hearing was indeed conducted in accordance with the standard that was in effect at the time of Dyer's convictions." The district court answered this question in the affirmative: "There is now no question about what was said and done at the hearing." After reviewing the transcript of the proceeding, the district court found that "Dyer has now received a hearing under the statutory standard that existed when he committed his crimes and was convicted." The court made no mention of any issues of mootness and did not discuss the appropriate standard of review for a federal court sitting in habeas under AEDPA.

Dyer appealed the district court's grant of respondent's motion for summary judgment and the dismissal of the writ of habeas corpus, arguing that the decision in the 2009 parole hearing was not in fact based on the earlier standard.

## II

There is a fundamental structural problem with the posture of the case—which neither the parties nor the district court raised—that prevents this court from considering the merits of the appeal. Dyer's initial petition for a writ of habeas corpus challenged the *1999* parole hearing as a violation of the Ex Post Facto clause. The district court dismissed Dyer's initial petition after considering, *de novo*, the *2009* parole hearing that the court had ordered, without the benefit of *any* state court consideration. It is undisputed that no *state* court has ever looked at the parole transcript to determine whether it was conducted in accordance with the older standards.

This court's prior recitation of the proper standard of review under AEDPA is the law of the case:

> For the purposes of AEDPA, we review the last state court decision on the merits, which in this case is the decision of the Tennessee Court of Appeals. *See Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005). A state-court decision is considered contrary to federal law "if the state court arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law or if the state court decides a case differently than the [Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). When the state court issues a decision that is contrary to federal law, we review the merits of the petitioner's claim de novo. *See Magana v. Hofbauer*, 263 F.3d 542, 551 (6th Cir. 2001) (citing *Williams*, 529 U.S. at 396-98); *see also Fulcher v. Motley*, 444 F.3d 791, 799 (6th Cir. 2006) ("The [state] Supreme Court's decisional rule was contrary to clearly established federal law, therefore de novo review is appropriate.").
>
> The application of federal law is unreasonable where "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. When assessing unreasonableness, "a federal habeas court may not issue the writ simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. Factual findings made by the state court, moreover, are presumed correct in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).

*Dyer v. Bowlen*, 465 F.3d 280, 284 (6th Cir. 2006). In this case, there was no "last state court decision on the merits" with respect to the *2009* parole hearing. The proceedings of the parole board do not constitute a state court decision on the merits. "A federal habeas court may not issue the writ simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Taylor*, 529 U.S. at 411. A federal court sitting in habeas certainly cannot exercise its "independent judgment" of whether a parole-board decision "applied clearly established federal law erroneously or incorrectly."

Thus, all subsequent proceedings after the June 2009 parole hearing could not properly be before the district court until the issues were exhausted in state courts, whose decisions could then be assessed under AEDPA. Likewise, these issues are not properly before this court.

Petitioner argues that there are other potential defects in the 2009 parole hearing, such as the fact that absent members did not meet face-to-face with Dyer and were not informed of the appropriate standard. Petitioner also argues that the 2009 hearing was a "sham" because board members merely paid lip-service to the older standard.[6] These allegations, and any other state mootness issues,[7] cannot be answered on this appeal and should be considered in the first instance by a state court.

Dyer exhausted all remedies in the state courts following the 1998 parole hearing prior to seeking collateral review from a federal court. He did not do so here for the 2009 parole hearing, and thus the district court should not have entertained his attack on the parole board's proceedings.

---

[6]The district court denied petitioner's motion for sanctions based on allegations of bad faith.

[7]Biennially scheduled parole hearings might outpace the speed at which litigation regarding a prior hearing could be fully exhausted through the state and federal systems. Strictly speaking, if a state holds a second parole hearing in order to remedy an alleged defect in the first parole hearing, the petition regarding the first hearing is moot. However, mootness may be defeated in such cases, as any reoccurring defects in these hearings could be "capable of repetition yet evading review." *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983); *see also Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (holding that the exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."); *Padilla v. Hanft*, 547 U.S. 1062 (2006) (Ginsburg, J., statement in dissent of denial of certiorari) (noting that the doctrine of "capable of repetition, yet evading review" applies in the habeas context).

## III

Perhaps the least-worst course of action in this type of situation—and what the district court did, in essence—would be to grant the writ conditionally unless a new parole hearing was held in accordance with the correct standards.[8] Otherwise, the writ would be granted, and Dyer would be released—really, the court's only possible remedy under habeas.[9] Once the parole hearing was held, the writ would be dismissed, and the court's supervisory powers under AEDPA would cease, permitting the state courts to consider the new hearing *de novo*. This is roughly what Judge Rogers

---

[8] *See Wilkinson v. Dotson*, 544 U.S. 74, 89 (2005) (Kennedy, J., dissenting) ("But the common practice of granting a conditional writ—ordering that a State release the prisoner or else correct the constitutional error through a new hearing—already allows a habeas court to compel the type of relief Justice SCALIA supposes to be unavailable."). *But cf. id.* at 86–87 (Scalia, J., concurring) ("The dissent suggests that because a habeas court may issue a conditional writ ordering a prisoner released unless the State conducts a new sentencing proceeding, the court may also issue a conditional writ ordering release absent a new parole proceeding. . . . By contrast, the validly sentenced prisoner who shows only that the State made a procedural error in denying discretionary parole has not established a right to release, and so cannot obtain habeas relief—conditional or otherwise. Conditional writs enable habeas courts to give States time to replace an invalid judgment with a valid one, and the consequence when they fail to do so is always release. Conditional writs are not an all-purpose weapon with which federal habeas courts can extort from the respondent custodian forms of relief short of release, whether a new parole hearing or a new mattress in the applicant's cell.").

[9] *See Dotson*, 544 U.S. at 86 (Scalia, J., concurring) ("It is one thing to say that permissible habeas relief, as our cases interpret the statute, includes ordering a 'quantum change in the level of custody,' *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991) (Posner, J.), such as release from incarceration to parole. It is quite another to say that the habeas statute authorizes federal courts to order relief that neither terminates custody, accelerates the future date of release from custody, nor reduces the level of custody. That is what is sought here: the mandating of a new parole hearing that may or may not result in release, prescription of the composition of the hearing panel, and specification of the procedures to be followed. A holding that this sort of judicial immersion in the administration of discretionary parole lies at the 'core of habeas' would utterly sever the writ from its common-law roots.").

suggested in his dissent and essentially what the district court did.[10]  After the new parole hearing

was held, the district court inspected the transcript to determine whether, on its face, it was compliant

with the older standards.  The district court found that it was.  It appears this initial facial inspection

was completed, and because the district court was satisfied that the older standards were adhered to,

it dismissed the writ.

## IV

This case also raises the question of what the correct course of conduct in this situation would

be in light of *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011).  Under *Cullen*, district courts are

prohibited from holding evidentiary hearings to supplement the record on habeas:

> We now hold that review under §2254(d)(1) is limited to the record that was before
> the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in
> the past tense, to a state-court adjudication that "resulted in" a decision that was
> contrary to, or "involved" an unreasonable application of, established law. This
> backward looking language requires an examination of the state court decision at the
> time it was made. It follows that the record under review is limited to the record in
> existence at that same time i.e., the record before the state court.

*Id.* at 1399.  In 2006, this court, prior to *Cullen*, directed the district court to hold an evidentiary

hearing.  *Cullen* would seem to foreclose such an order.

In *Cullen*, there was some dispute between the majority and the dissent about what would

happen if a new claim, *i.e.*, one not argued on the merits below, such as newly-discovered

---

[10] *Dyer*, 465 F.3d at 295 (Rogers, J., dissenting) ("Instead of creating these problems, there is a course that is perfectly respectful of state prerogatives, practical, and consistent with Supreme Court precedent: issue the writ and have the board make its determination under substantive criteria no more onerous than those applicable at the time of Dyer's crime.").

exculpatory evidence, were to arise.[11] As in this case, when there are no records to establish what transpired at a parole hearing and the state court did not consider those matters in the first instance, the circumstances may warrant a new evidentiary hearing as to what happened at the original parole hearing. However, a new evidentiary hearing does not inexorably lead to the court's mandating a new parole hearing. Rather than holding an evidentiary hearing to gather existing evidence, a new parole hearing has the effect of generating new evidence—namely, the transcript, which the judge ordered to be created. Perhaps future cases may present a better opportunity to explore the tension in *Cullen* as applied to a case where evidence cannot be located or does not exist. Due to the unique procedural posture of this case, however, now is not such a time.

## V

With respect to tolling and statutes of limitations, this case is in an odd spot. The parole hearing in question was held in 2009. The record does not indicate whether Dyer appealed the denial through the state court system, as he did his parole hearing in 1999. Why would he, as the district court was considering it as a matter of first impression? Thus, the question remains, following dismissal of the writ, can Dyer now timely appeal the 2009 parole hearing?

---

[11] *Compare Cullen*, 131 S. Ct. at 1401 n.10 ("Though we do not decide where to draw the line between new claims and claims adjudicated on the merits, see n. 11, *infra*, Justice Sotomayor's hypothetical involving new evidence of withheld exculpatory witness statements, see post, at 1417-1418, may well present a new claim."), *with id.* at 1417 (Sotomayor, J., dissenting) ("The majority charts a third, novel course that, so far as I am aware, no court of appeals has adopted: § 2254(d)(1) continues to apply when a petitioner has additional evidence that he was unable to present to the state court, but the district court cannot consider that evidence in deciding whether the petitioner has satisfied § 2254(d)(1). The problem with this approach is its potential to bar federal habeas relief for diligent habeas petitioners who cannot present new evidence to a state court.").

Generally, federal courts can toll federal statutes of limitations during the pendency of state-court proceedings. *Evans v. Chavis*, 546 U.S. 189, 197 (2006) (holding that properly filed application for state-court discretionary review tolls AEDPA limitations period). However, it does not work the other way around. A federal court cannot toll state statutes of limitations during federal habeas proceedings. This is usually not an issue, as most petitioners only receive federal habeas review after a trip through the state-court system during which, presumptively, all claims filed were timely (if they were not, petitioner would need to excuse any such procedural defaults). Here, the district court considered the merits while the state statute of limitations ticked away. This court cannot opine on whether, under Tennessee law, any relevant statutes of limitations following Dyer's 2009 parole hearing were tolled during the pendency of these federal proceedings.

However, after exhausting state remedies with respect to the 2009 parole hearing, Dyer could file a petition for habeas corpus in federal court. As Justice Breyer noted in his opinion, concurring in part, dissenting in part, in *Cullen*:

> There is no role in (d) analysis for a habeas petitioner to introduce evidence that was not first presented to the state courts. But that does not mean that Pinholster is without recourse to present new evidence. He can always return to state court presenting new evidence not previously presented. If the state court again denies relief, he might be able to return to federal court to make claims related to the latest rejection, subject to AEDPA's limitations on successive petitions. See § 2244.

*Cullen*, 131 S. Ct. at 1413–14. If the state courts deny Dyer relief, asserting that the statutes of limitations have run, "he might be able to return to federal court to make claims related to the latest rejection, subject to AEDPA's limitations on successive petitions." *Ibid.*

**VI**

Dyer's petition for a writ of habeas corpus should be dismissed with prejudice.

**JULIA SMITH GIBBONS, Circuit Judge, concurring in the judgment.** The majority opinion reaches the correct result: affirming the district court's dismissal of Dyer's *habeas* petition. I write separately, however, and concur only in the judgment because conceptually the case seems relatively straightforward to me, and I am not in agreement with all of the majority's reasoning.

A district court that grants *habeas* relief to a state prisoner has only two options: issue the writ unconditionally or issue the writ conditionally. 39 Am. Jur. 2d Habeas Corpus § 5 (updated 2012) ("[T]he only remedy which can be granted on a petition for writ of habeas corpus is release from custody, whether absolute or conditional."); *see Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006) ("[T]he sole distinction between a conditional grant and an absolute grant of the writ of habeas corpus is that the former lies latent unless and until the state fails to perform the established condition, at which time the writ springs to life."). Here, as the majority suggests, the district court effectively issued a conditional writ when it "direct[ed]" that the state conduct a new parole hearing under the old standards—a remedy our court, albeit in a dissent, had roughly suggested. *Dyer v. Bowlen*, 465 F.3d 280, 295 (Rogers, J., dissenting). This course of action was rather unremarkable. *See Satterlee v. Wolfenbarger*, 453 F.3d 362, 369 n.5 (6th Cir. 2006) ("[T]his court has consistently endorsed the use of conditional writs . . . ."); *see, e.g.*, *Mickens-Thomas v. Vaughn*, 321 F.3d 374, 393 (3d Cir. 2003) (remanding state prisoner's case "to the [state Parole] Board for further proceedings consistent with this opinion, including a new hearing for Thomas").

After the state conducted a new parole hearing, the district court was required to consider whether Dyer's *habeas* petition was moot. This too was unremarkable. *See N. Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("Even in cases arising in the state courts, the question of mootness is a federal

one which a federal court must resolve before it assumes jurisdiction."). And in order to determine whether Dyer's petition had become moot in light of the new parole hearing, the district court had to inquire whether, at least facially, the hearing was conducted as directed under the old standard. After performing this facial analysis and concluding that "Dyer has now received a hearing under the old statutory standard that existed when he committed his crimes and was convicted," the district should simply have dismissed Dyer's petition as moot. Unfortunately, perhaps because the state had moved for summary judgment rather than to dismiss, the district court granted the state's summary judgment motion and thereby engendered some confusion. But the only way to understand the district court's order is as a dismissal of Dyer's *habeas* petition as moot. *See Jalowiec v. Bradshaw*, 657 F.3d 293, 306 (6th Cir. 2011) (acknowledging a "facial inconsistency" and "misleading language" in the district court's opinion, but overlooking those flaws by relying upon "a common-sense reading of the opinion as a whole" as well as Supreme Court precedent). This dismissal was not in error, and therefore the proper outcome is to affirm the district court.

The majority appears to embrace this straightforward reasoning. (Maj. Op. 11.) At the same time, however, the majority discerns a "fundamental structural problem" with the case, reasoning that Dyer failed to exhaust his state-court remedies after the new parole hearing and was required to return to state court. (Maj. Op. 7–10.) The majority concludes that "all subsequent proceedings after the June 2009 parole hearing could not properly be before the district court until the issues were exhausted in state courts." (Maj. Op. 9.) But as explained above, the question of whether Dyer's petition was moot *was* properly before the district court. And Dyer was certainly permitted to argue that the parole board did not abide by the correct standards—he simply was not entitled to receive

- 16 -

more than a skin-deep review for mootness. If Dyer seeks a deeper review of the parole board's actions, only then he will have to return to state court to exhaust his remedies.

Furthermore, the majority's observation that "[o]nce the parole hearing was held, the writ would be dismissed, and the [district] court's supervisory powers under AEDPA would cease," is also problematic. (Maj. Op. 10–11.) First, for the reasons already stated, the district court can and must exercise its "supervisory powers" at least to consider the question of mootness. Second, to extent this statement implies that a federal court is without jurisdiction to consider whether a state court has complied with an order granting a conditional writ, it is erroneous. *See Gentry*, 456 F.3d at 692 ("A federal district court retains jurisdiction to determine whether a party has complied with the terms of a conditional order in a habeas case."); *see also Patterson v. Haskins*, 470 F.3d 645, 667–68 (6th Cir. 2006) (noting that district court and appellate court jurisdiction was proper to "evaluate[] compliance with the terms of the conditional writ").

In addition, after reaching the correct conclusion (Maj. Op. 11), the majority then discusses in Parts IV and V several issues that are not necessary to the outcome of Dyer's appeal. Given that the application of *Cullen* and possible future limitations issues are not germane to resolution of the issue before us, I would refrain from any analysis on these points.

With the foregoing observations, I concur in the judgment of the court.